174 Cal.App.4th 1426 (2009)
In re J.K., a Person Coming Under the Juvenile Court Law.
LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent,
v.
T.K., Defendant and Appellant.
No. B210150.
Court of Appeals of California, Second District, Division Seven.
May 18, 2009.
*1428 Nicole Williams, under appointment by the Court of Appeal, for Defendant and Appellant.
Raymond G. Fortner, Jr., County Counsel, James M. Owens, Assistant County Counsel, and Judith A. Luby, Principal Deputy County Counsel, for Plaintiff and Respondent.

OPINION
WOODS, J.
T.K. appeals the order sustaining the allegations in the juvenile dependency petition concerning his daughter J.K. under Welfare and Institutions Code[1] section 300, subdivisions (a), (b) and (d). T.K. claims the court erred in concluding that one incident of sexual abuse committed approximately six years before the petition was filed and one incident of physical abuse about two years before demonstrated the minor was at risk of future harm. As we shall explain, we do not agree. First, on appeal T.K. does not deny the sexual abuse in which he was alleged to have raped his daughter or the physical abuse in which he was alleged to have struck the minor and dislocated her shoulder constitute instances of prior "serious physical harm" under section 300. Contrary, to T.K.'s argument, pursuant to section 300 subdivisions (a), (b) and (d), the court can exercise dependency jurisdiction based on findings of prior instances of serious harm or abuse. In any event, *1429 the evidence in the record is sufficient to support a finding of future risk of harm. Accordingly, we affirm.

FACTUAL AND PROCEDURAL HISTORY
J.K. (Minor), born in September 1992, is the daughter of T.K. (Father) and J.K. (Mother). Mother and Father have been divorced since Minor was two years old. Minor has lived with Mother and has visited Father "sporadically" since the parents' divorce.
In 2008, Minor, then 15 years old, was in therapy to address her declining academic performance, her depression and her frequent absences from high school. She had missed 78 days of school since the beginning of the school year. During therapy she disclosed that when she was younger her Father had raped her on one occasion.[2] Minor also disclosed that on one other occasion when she was about 13 years old and staying with Father for a week, he struck her on the shoulder, causing it to become dislocated. She stated that she had locked herself in a bathroom to block out the noise from her Father and his girlfriend "partying and playing loud music." When she refused to open the door, Father became angry and broke down the door and struck her on the shoulder.
When interviewed, Mother indicated that she first learned of the sexual abuse about two years after it happened, but she did not speak to Father about it and continued to allow Minor to visit her Father after it occurred because Minor and Father were "close" and because Minor insisted on seeing him. Mother also stated that she took Minor to the doctor after the incident of physical abuse, but neither Mother nor Minor disclosed to the doctor how the injury had occurred; they reported that it was an accident. Mother stated that after Father dislocated Minor's shoulder Mother told Father never to touch Minor again.
The DCFS detention report further indicated the DCFS had been unable to contact Father to obtain his statement and that he had not made himself available for an interview.
On May 20, 2008, the DCFS filed a dependency petition alleging Minor was a person described by section 300, subdivisions (a), (b) and (d). Under *1430 subdivision (a) the petition alleged that Father had struck Minor on the shoulder causing severe pain and the dislocation of her shoulder. It further alleged Mother knew of the incident and failed to protect the child and that Mother continued to allow Minor to visit Father after Mother learned of the abuse. Allegation (b-1) of the petition contained an allegation that on a prior occasion Father sexually abused the child by forcibly raping the child and engaging in sexual intercourse, fondling and oral copulation on her. It further alleged Mother knew of the incident and failed to protect the child, did not believe the child and allowed Minor to continue to visit with Father after learning of the abuse. The petition also included an allegation (b-2) that alleged the incident of physical abuse described in allegation (a). Under subdivision (d), the allegation described the incident of sexual abuse included in allegation (b-1). As to all of the allegations under subdivisions (a), (b) and (d), the petition alleged that the Father's abuse and the Mother's failure to protect her placed the Minor at risk of physical and emotional harm, and damage.
At the detention hearing, the juvenile dependency court found Father to be the presumed father, and detained Minor, finding prima facie evidence that the Minor was a person described under section 300, subdivisions (a), (b) and (d). The court made findings as to the Father that there was a substantial risk to the emotional and physical health of Minor and that no reasonable means existed to protect her without the removal from her Father. The court ordered that Minor be released to Mother and ordered Father to have visits with Minor's consent; Minor informed the court that she did not wish to visit with Father. Minor's counsel asked the court to consider terminating jurisdiction with a family law order giving Mother sole legal and physical custody.
The jurisdiction and disposition report described the alleged incidents and further indicated that Mother and Minor had a good relationship, that they had both been to counseling and that Mother was cooperative and following the DCFS's recommendations. Mother now believed the claims of sexual abuse made by Minor and intended to protect her. At a pretrial hearing in June 2008, the court issued a "stay-away" order requiring Mother and Father to stay at least 100 yards away from each other. Counsel for the DCFS indicated that Father had declined to be interviewed. The court ordered a supplemental report to include an interview with Father and that Father could be questioned with his counsel present.[3]
At the August 11, 2008, jurisdictional and dispositional hearing, Father's counsel did not present any evidence, and submitted on the reports and other *1431 documents in the record. Father's counsel did, however, make a motion to dismiss under section 350, subdivision (c) arguing that the DCFS had not met its burden of proof. Specifically counsel argued that the one incident of sexual abuse was remote in time and that only one incident of physical abuse had occurred, and as such the DCFS had failed to demonstrate a current risk to Minor. The court denied the motion to dismiss. The court noted that Minor's statements concerning the abuse were consistent and specific; she had presented enough information for the court to believe her claims were true. The court found Minor was a person described by section 300, subdivisions (a), (b) and (d) based on the conduct of Father and the Mother. As for the disposition, the juvenile court ordered that Minor be placed with her Mother. The court issued a family law exit order awarding Mother full legal and physical custody of Minor and allowed monitored visits for Father with Minor's consent. The court then terminated jurisdiction.
Father timely appeals.

DISCUSSION
On appeal, Father argues the juvenile court's jurisdictional findings sustaining the section 300, subdivisions (a), (b) and (d) allegations in the petition must be reversed because there is insufficient evidence that the conduct alleged posed a future risk of harm to Minor. Before we address the merits of these issues we first dispose of a threshold matter.

A. Mootness

(1) After the court sustained the jurisdictional allegations in the petition, it proceeded to the disposition. Accordingly, the court issued a family law exit order awarding Mother full legal and physical custody of Minor and allowed monitored visits for Father with Minor's consent. The court then terminated dependency jurisdiction. Arguably termination of the court's jurisdiction renders the appeal moot. (See In re James B. (1986) 184 Cal.App.3d 524, 528 [229 Cal.Rptr. 206] [the court's termination of jurisdiction after sustaining the petition and issuing disposition orders raises an issue of mootness with respect to a subsequent challenge to the exercise of jurisdiction].) Likewise, the question of mootness also arises because Father has not challenged the allegations in the original amended petition, concerning Mother's failure to protect the child and thus, the court's exercise of jurisdiction over the child is appropriate at least with respect to section 300 allegations in the original petition. (In re Alysha S. (1996) 51 Cal.App.4th 393, 397 [58 Cal.Rptr.2d 494] ["[T]he minor is a dependent if the actions of either parent bring her within one of the statutory definitions of a dependent."].) This notwithstanding, the sustained jurisdictional findings against Father have *1432 had an adverse effect on his custody rights. In addition, the court ordered the stay-away order to stay in effect after it terminated dependency jurisdiction. Moreover, the jurisdictional findings could affect Father in the future, if dependency proceedings were ever initiated, or even contemplated, with regard to the Minor or Father's other children, if any. (In re Joshua C. (1994) 24 Cal.App.4th 1544, 1547 [30 Cal.Rptr.2d 10] [appeals in dependency matters are not moot if "`the purported error is of such magnitude as to infect the outcome of [subsequent proceedings]. . .'"].) Consequently, we conclude Father's challenge to the jurisdictional findings is not moot.

B. Jurisdictional Findings

(2) At the jurisdictional hearing the juvenile court determines whether the allegations in the petition that the minor comes within section 300 (and therefore within the juvenile court's jurisdiction) are true. The court's jurisdictional findings must be based on a preponderance of the evidence. (See § 355.) If the court finds jurisdiction under section 300, it declares the child a dependent of the juvenile court and proceeds to the disposition phase, where the court considers whether the child should be removed from the parents under section 361.[4]
*1433 At the dispositional phase of dependency proceedings the juvenile dependency court must find clear and convincing evidence to remove a child from his or her parents. (See § 361; Sheila S. v. Superior Court (2000) 84 Cal.App.4th 872, 881 [101 Cal.Rptr.2d [87].)
On appeal, the "substantial evidence" test is the appropriate standard of review for both the jurisdictional and dispositional findings. (In re Kristin H. (1996) 46 Cal.App.4th 1635, 1654 [54 Cal.Rptr.2d 722]; In re P.A. (2006) 144 Cal.App.4th 1339, 1344 [51 Cal.Rptr.3d 448].) The term "substantial evidence" means such relevant evidence as a reasonable mind would accept as adequate to support a conclusion; it is evidence which is reasonable in nature, credible, and of solid value. (See In re Jerry M. (1997) 59 Cal.App.4th 289, 298 [69 Cal.Rptr.2d 148].) With these principles in mind, we examine appellant's contentions.
On appeal, Father argues that the court's jurisdictional findings cannot stand because the DCFS did not demonstrate that Minor was at risk of future harm. For the sake of appeal, he does not contest the claims alleged. Father does not deny that the one incident of rape, sexual intercourse, fondling and oral copulation upon his nine-year-old daughter or that the incident where he struck the minor with such force that he dislocated her shoulder qualify under section 300 subdivisions (a), (b) and (d) as serious physical harm and/or sexual abuse. Instead he argues, that before the juvenile dependency jurisdiction can be exercised based on these subdivisions the DCFS must demonstrate that his actions create future risk of harm to the child. Father argues the incidents alleged, though serious, were remote and do not demonstrate a continuing or substantial future risk to the minor. As we shall explain, we do not agree.
Section 300, subdivisions (a), (b) and (d) all provide, in pertinent part:
"Any child who comes within any of the following descriptions is within the jurisdiction of the juvenile court which may adjudge that person to be a dependent child of the court:
*1434 "(a) The child has suffered, or there is a substantial risk that the child will suffer, serious physical harm inflicted nonaccidentally upon the child by the child's parent or guardian. For the purposes of this subdivision, a court may find there is a substantial risk of serious future injury based on the manner in which a less serious injury was inflicted, a history of repeated inflictions of injuries on the child or the child's siblings, or a combination of these and other actions by the parent or guardian which indicate the child is at risk of serious physical harm. For purposes of this subdivision, "serious physical harm" does not include reasonable and age-appropriate spanking to the buttocks where there is no evidence of serious physical injury.
"(b) The child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child, or the willful or negligent failure of the child's parent or guardian to adequately supervise or protect the child from the conduct of the custodian with whom the child has been left, or by the willful or negligent failure of the parent or guardian to provide the child with adequate food, clothing, shelter, or medical treatment, or by the inability of the parent or guardian to provide regular care for the child due to the parent's or guardian's mental illness, developmental disability, or substance abuse. . . .The child shall continue to be a dependent child pursuant to this subdivision only so long as is necessary to protect the child from risk of suffering serious physical harm or illness. [¶] ... [¶]
"(d) The child has been sexually abused, or there is a substantial risk that the child will be sexually abused, as defined in Section 11165.1 of the Penal Code, by his or her parent or guardian or a member of his or her household, or the parent or guardian has failed to adequately protect the child from sexual abuse when the parent or guardian knew or reasonably should have known that the child was in danger of sexual abuse." (§ 300, subds. (a), (b), (d), italics added.)

1. Evidence of prior serious harm or abuse satisfies jurisdiction under section 300, subdivisions (a), (b) and (d).

(3) The language of section 300, subdivisions (a), (b) and (d) is clear. All three subdivisions are satisfied by a showing that the minor has suffered prior serious physical harm or abuse. (Section 300, subds. (a) ["The child has suffered, or there is a substantial risk that the child will suffer, serious physical harm inflicted nonaccidentally upon the child by the child's parent or guardian." (italics added)], (b) ["The child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child . . . ." (italics added)], (d) ["The child has been *1435 sexually abused, or there is a substantial risk that the child will be sexually abused . . . ." (italics added)].) In addition, the use of the disjunctive "or" demonstrates that a showing of prior abuse and harm is sufficient, standing alone, to establish[5] dependency jurisdiction under these subdivisions.
Our analysis finds support in In re David H. (2008) 165 Cal.App.4th 1626, 1644 [82 Cal.Rptr.3d 81] (David H.), where Division Five of the First District Court of Appeal concluded that an allegation the minor had suffered prior serious harm inflicted by his mother was sufficient, alone, to support jurisdiction under section 300, subdivision (a). Based on the plain language of subdivision (a) the David H. court rejected arguments, similar to Father's made here, that there must be evidence that the child faces a substantial risk of harm at the time of the hearing to support the jurisdictional findings. (165 Cal.App.4th at p. 1641.) The court in David H., further noted that a finding of jurisdiction does not give the court the right to remove the minor from parental custody. (Id. at p. 1644.) Indeed, current or future risk to the child is relevant; it is an alternative basis for jurisdiction under section 300, subdivisions (a), (b) and (d). Moreover it is relevant, even when jurisdictional findings are based on prior abuse, to the dispositional phase when the court determines whether, under section 361, removal from parental custody is warranted.
Father, like the mother in David H., supports his argument that jurisdiction must be supported on a showing of future risk, by relying on In re Rocco M. (1991) 1 Cal.App.4th 814, 824 [2 Cal.Rptr.2d 429] (Rocco M.), and other cases cited in Rocco M. as well as subsequent cases following Rocco M.
Neither Rocco M. nor any of the other cases cited by Father, however, persuades us. In Rocco M. the petition had alleged that the mother had left Rocco in the care of a relative who was arrested for possession of heroin and methamphetamines; the mother left Rocco in the care of a friend who kicked him in the stomach; the mother had a history of drug and alcohol abuse that interfered with her ability to provide for and supervise Rocco; and Rocco had previously been removed from the mother's care for three years due to her neglect of his basic needs. (Rocco M., supra, 1 Cal.App.4th at p. 817.) After reviewing the legislative history of a prior iteration of section 300, subdivision (b), the Rocco M. court concluded: "Before courts and agencies can exert jurisdiction under section 300, subdivision (b), there must be evidence *1436 indicating that the child is exposed to a substantial risk of serious physical harm or illness" and "[w]hile evidence of past conduct may be probative of current conditions, the question under section 300 is whether circumstances at the time of the hearing subject the minor to the defined risk of harm [citations omitted] [and] [t]hus the past infliction of physical harm by a caretaker, standing alone, does not establish a substantial risk of physical harm; `[t]here must be some reason to believe the acts may continue in the future.'" (1 Cal.App.4th at pp. 823-824, some italics & fn. omitted.) It is this quoted language in Rocco M., which subsequent published opinions, the mother in David H. and the Father here, have seized upon to support the contention that a demonstration of future risk is always required to sustain jurisdiction under section 300. However, a careful examination of Rocco M. does not support this reliance.
First, as noted in David H., the Rocco M. court derived its views concerning the future risk requirement from case law that considered the prior statutory scheme. (Rocco M., supra, 1 Cal.App.4th at p. 824; see In re James B., supra, 184 Cal.App.3d at pp. 528, 529; In re Katrina C. (1988) 201 Cal.App.3d 540, 546 [247 Cal.Rptr. 784]; In re Jennifer P. (1985) 174 Cal.App.3d 322, 325, fn. 2, 326 [219 Cal.Rptr. 909]; In re Nicole B. (1979) 93 Cal.App.3d 874, 877-878 [155 Cal.Rptr. 916]; In re Jessica B. (1989) 207 Cal.App.3d 504, 509, 517 [254 Cal.Rptr. 883]; In re Lisa D. (1978) 81 Cal.App.3d 192, 194, fn. 1, 196-197 [146 Cal.Rptr. 178].) The prior version of the statute at issue in those cases, however, is materially different from the current version. The former statute used only the present tense (e.g., establishing jurisdiction where the "`home is an unfit place ...'") and "indicates an intent that the unfitness exists at the time of the hearing." (In re James B., supra, 184 Cal.App.3d at pp. 528, 529, italics added; see also In re Katrina C., supra, 201 Cal.App.3d at p. 546 [noting that under former § 300, subd. (a), the minor must be a person "`[w]ho is in need of proper and effective parental care or control.'"].) In 1987, the Legislature revised the grounds for jurisdiction, as relevant here, to circumstances where the minor "`has suffered, or there is a substantial risk that the minor will suffer, serious physical harm inflicted nonaccidentally upon the minor by the minor's parent or guardian.'" (Rocco M., supra, 1 Cal.App.4th at p. 823, quoting former § 300, subd. (a).) As noted in David H., "[t]he Legislature apparently concluded that a showing of past serious physical harm was sufficient to establish a need for court intervention even without a separate showing of a substantial risk of future serious physical harm." (David H., supra, 165 Cal.App.4th at p. 1642, fn. 14, italics omitted.) In view of the 1987 amendments, Rocco M.'s pronouncementsrelied on by Father and cited in subsequent case lawlack support. Rocco M.'s analysis does not account for or address the change in the statutory scheme, which provides for the exercise of jurisdiction based on prior harm.
*1437 Second, the value of the oft quoted language in Rocco M. is further diminished because it is clearly dicta. The Rocco M. court acknowledged: "[w]e need not decide whether this evidence [of prior instances of abuse and neglect] alone might have supported the dependency order, however, because we hold that the trial court could find a substantial risk of serious physical harm in the fact that Rocco's mother created the danger that Rocco would ingest hazardous drugs." (Rocco M., supra, 1 Cal.App.4th at p. 825.)
None of the other cases Father cites supports his construction of section 300, subdivisions (a), (b) and (d). In In re Alysha S., supra, 51 Cal.App.4th 393 (Alysha S.), cited by Father, the court found an allegation of prior physical harm did not establish jurisdiction because it did not satisfy the requirements of section 300. Specifically, the petition alleged, that over a year before dependency proceedings began, the father touched the toddler on the buttocks and vaginal area in a way that seemed inappropriate to the mother. (Alysha S., supra, 51 Cal.App.4th at p. 396.) The Court of Appeal held the allegation was insufficient to establish jurisdiction. (Id. at pp. 399-400.) Relying on Rocco M., the court emphasized the absence of any allegation of a current risk of harm to the minor. (Id. at pp. 398-400.) However, the court also observed that there were "no allegations as to the severity of any physical harm resulting from the alleged touchings." (Id. at p. 399.) That is, the petition failed to allege "serious physical harm" as required by section 300, subdivision (b), the alleged basis for jurisdiction. (51 Cal.App.4th at pp. 398-399.)
Similarly, In re Janet T. (2001) 93 Cal.App.4th 377, 388-389 [113 Cal.Rptr.2d 163] decided by this division is also distinguishable because the incidents supporting the exercise of jurisdictionthat the mother failed to ensure that the children attended school and that the mother suffered from mental and emotional problemshad not resulted in any serious physical harm and abuse. Thus, this court's references to the risk of harm language from Rocco M. and similar references by the court in Alysha S. were not material to the determination of those appeals. In neither case did the incidents nor harms alleged qualify as sufficiently serious to support the exercise of jurisdiction irrespective of any lack of showing of future or current risk. In contrast here, the prior incident of rape and sexual abuse and physical abuse are very serious.
Father's reliance on In re Ricardo L. (2003) 109 Cal.App.4th 552, 566-567 [135 Cal.Rptr.2d 72], and In re Rubisela E. (2000) 85 Cal.App.4th 177, 197-198 [101 Cal.Rptr.2d 760] is also misplaced because those cases concern the application of section 300, subdivision (j) which requires evidence of past abuse to a sibling and substantial risk that the minor will be abused in the future. (§ 300, subd. (j) ["The child's sibling has been abused or neglected, as *1438 defined in subdivision (a), (b), (d), (e), or (i), and there is a substantial risk that the child will be abused or neglected, as defined in those subdivisions. The court shall consider the circumstances surrounding the abuse or neglect of the sibling, the age and gender of each child, the nature of the abuse or neglect of the sibling, the mental condition of the parent or guardian, and any other factors the court considers probative in determining whether there is a substantial risk to the child."].)
In addition we do not agree with an argument Father raised in his reply brief concerning section 355.1, subdivision (d).
Section 355.1, subdivision (d) provides: "Where the court finds that either a parent, a guardian, or any other person who resides with, or has the care or custody of, a minor who is currently the subject of the petition filed under Section 300 (1) has been previously convicted of sexual abuse as defined in Section 11165.1 of the Penal Code, (2) has been previously convicted of an act in another state that would constitute sexual abuse as defined in Section 11165.1 of the Penal Code if committed in this state, (3) has been found in a prior dependency hearing or similar proceeding in the corresponding court of another state to have committed an act of sexual abuse, or (4) is required, as the result of a felony conviction, to register as a sex offender pursuant to Section 290 of the Penal Code, that finding shall be prima facie evidence in any proceeding that the subject minor is a person described by subdivision (a), (b), (c), or (d) of Section 300 and is at substantial risk of abuse or neglect. The prima facie evidence constitutes a presumption affecting the burden of producing evidence." (§ 355.1, subd. (d).)
(4) Specifically Father asserts that a conclusion that prior acts of physical or sexual abuse support jurisdiction under section 300, subdivisions (a), (b) and (d) renders section 355.1, subdivision (d) meaningless. We do not agree. First, section 355.1, subdivision (d) is broader than section 300it applies to people in addition to parents and guardians. Section 355.1 also applies to a broader range of conduct than section 300 including actions which may have no connection to the minor (i.e., failing to register as a sex offender). Thus, section 355.1 remains meaningful and relevant, irrespective of whether section 300, subdivisions (a), (b) and (d) are interpreted to apply to prior instances of abuse. Moreover, section 355.1 serves only to allocate the burden of producing evidence; it raises a rebuttable presumption that the minor is a person described under section 300 and is at substantial risk of abuse or neglect. Our conclusion that section 300, subdivisions (a), (b) and (d) can be met based on evidence of prior acts does nothing to undermine section 355.1's burden allocation scheme; our interpretation does not mean that any unsubstantiated allegation of prior abuse is a sufficient basis for dependency jurisdiction. To the contrary, the court's jurisdictional findings must still be based on a preponderance of the evidence.
*1439 (5) Here there is no question that Father's prior infliction of sexual and physical abuse upon Minor resulted in serious injury and harm. In light of our view that a showing of prior physical or sexual abuse is sufficient to support the initial exercise of jurisdiction under section 300, subdivisions (a), (b) and (d), we conclude the juvenile dependency court properly sustained the jurisdictional allegations in the petition.

2. The evidence showed current and future risk.

Notwithstanding our conclusions concerning the allegations of prior abuse, sufficient evidence in the record also supported the allegations under section 300, subdivisions (a), (b) and (d) that Father's abuse and Mother's failure to protect her placed Minor at substantial risk of physical and emotional harm, and damage. Father's claim that insufficient evidence supported the jurisdiction findings focuses almost exclusively on the remoteness of the sexual abuse and the fact that he mistreated the child on only two occasions.
Father's conduct must be viewed in its proper context. First, it appears that Minor did not have daily contact or even regular contract with Father; Mother described the visits as "sporadic." Thus, Father's opportunities to inflict harm upon Minor were limited in any event. Second, Father downplays the physical abuse in this case. Father broke down the bathroom door and struck Minor, dislocating her shoulder and this incident occurred only about two years prior to the initiation of proceedings. This event is not so remote that it can be ignored. Furthermore, there is no evidence in the record to suggest that Father has taken any steps to address his behavior that led to the abuse. Father did not present any evidence on his own behalf nor does it appear he made any genuine effort to cooperate with the DCFS to address the issues or even to give his side of the story.
Moreover, Father fails to meaningfully address the evidence of current and future risk posed by Mother's conduct, which also forms the basis of the jurisdictional allegations. Until the dependency petition was filed Mother never took any steps to report the incident of sexual abuse; she did not confront Father about it and continued to allow Minor to visit Father. In fact until she began counseling in connection with the dependency proceedings Mother stated that she did not believe Minor's claims concerning the rape. Mother's failure to protect Minor continued after Father dislocated Minor's shoulder. Mother lied to the doctor when she was asked about the cause of the injury. It was only after the dependency petition was filed that Mother began to take steps to protect her daughter.
*1440 (6) Given the totality of the circumstancesthe severity of the incidents, the fact that there was not a substantial lapse of time[6] between the two instances of abuse or between the last instance and the filing of the petition, Father and Minor's sporadic contact, and Mother's persistent failure to protect the Minor, we cannot say the lower court's findings that the Minor was at substantial risk of physical and emotional harm, was unreasonable or lacks a sufficient evidentiary support in the record.

DISPOSITION
The juvenile court's order is affirmed.
Perluss, P. J., and Zelon, J., concurred.
NOTES
[1] All statutory references are to the Welfare and Institutions Code unless otherwise indicated.
[2] Minor could not remember exactly how old she was at the time, but based on the Los Angeles County Department of Children and Family Services (DCFS) investigation it appears that the sexual abuse occurred when Minor was approximately nine years old, about six years before she reported it to the therapist. Minor told the social worker that the rape occurred during the summer when she spent the night at her Father's house. She stated that Father came into her room while she was in bed sleeping, that he performed oral sex on her and had sexual intercourse with her. According to Minor, she and Father never discussed the incident and she did not tell anyone at the time.
[3] The social worker apparently attempted to interview Father in August 2008, but Father said he was "kind of homeless" at the time. He said he would try to arrange something through his lawyer, but the interview never occurred.
[4] The guidelines and limitations for removal of a child from the custody of the parents are set forth in section 361. Section 361 provides, in pertinent part:

"(c) A dependent child may not be taken from the physical custody of his or her parents or guardian or guardians with whom the child resides at the time the petition was initiated, unless the juvenile court finds clear and convincing evidence of any of the following circumstances listed in paragraphs (1) to (5), inclusive, and, in an Indian child custody proceeding, paragraph (6):
"(1) There is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's or guardian's physical custody. The fact that a minor has been adjudicated a dependent child of the court pursuant to subdivision (e) of Section 300 shall constitute prima facie evidence that the minor cannot be safely left in the physical custody of the parent or guardian with whom the minor resided at the time of injury. The court shall consider, as a reasonable means to protect the minor, the option of removing an offending parent or guardian from the home. The court shall also consider, as a reasonable means to protect the minor, allowing a nonoffending parent or guardian to retain physical custody as long as that parent or guardian presents a plan acceptable to the court demonstrating that he or she will be able to protect the child from future harm.
"(2) The parent or guardian of the minor is unwilling to have physical custody of the minor, and the parent or guardian has been notified that if the minor remains out of their physical custody for the period specified in Section 366.26, the minor may be declared permanently free from their custody and control.
"(3) The minor is suffering severe emotional damage, as indicated by extreme anxiety, depression, withdrawal, or untoward aggressive behavior toward himself or herself or others, and there are no reasonable means by which the minor's emotional health may be protected without removing the minor from the physical custody of his or her parent or guardian.
"(4) The minor or a sibling of the minor has been sexually abused, or is deemed to be at substantial risk of being sexually abused, by a parent, guardian, or member of his or her household, or other person known to his or her parent, and there are no reasonable means by which the minor can be protected from further sexual abuse or a substantial risk of sexual abuse without removing the minor from his or her parent or guardian, or the minor does not wish to return to his or her parent or guardian.
"(5) The minor has been left without any provision for his or her support, or a parent who has been incarcerated or institutionalized cannot arrange for the care of the minor, or a relative or other adult custodian with whom the child has been left by the parent is unwilling or unable to provide care or support for the child and the whereabouts of the parent is unknown and reasonable efforts to locate him or her have been unsuccessful."
[5] We note, however, that at least with respect to section 300, subdivision (b), prior abuse and harm may be sufficient to support the initial exercise of jurisdiction, but "[t]he child shall continue to be a dependent child pursuant to this subdivision only so long as is necessary to protect the child from risk of suffering serious physical harm or illness." (Italics added.) We interpret this language to be consistent and in harmony with the first phrase of subdivision (b) and thus the use of the term "continue" presupposes an initial exercise of jurisdiction either based on a prior incident of harm or a current or future risk.
[6] David H. suggested that in unusual circumstances, "such as a substantial lapse of time between the incident and the filing of a petition or the date of a jurisdictional hearing," an allegation that a child has suffered serious physical harm inflicted nonaccidentally by a parent or guardian might not be sufficient to establish jurisdiction under section 300, subdivision (a). (David H., supra, 165 Cal.App.4th at p. 1644.)