Filed 10/16/13  In re Sophia S. CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re SOPHIA S. et al., Persons Coming Under the Juvenile Court Law. | B246223 (Los Angeles County Super. Ct. No. CK89606) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>       Plaintiff and Respondent,<br><br>       v.<br><br>ROBERT S.,<br><br>       Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Sherri Sobel, Temporary Judge.  (Pursuant to Cal. Const., art. VI, § 21.)  Affirmed.

Suzanne M. Davidson, under appointment by the Court of Appeal, for Defendant and Appellant.

John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel and Jeanette Cauble, Deputy County Counsel for Plaintiff and Respondent.

# I.  INTRODUCTION

The father, Robert S., appeals from the juvenile court's December 14, 2012 order continuing jurisdiction at the Welfare and Institutions Code section 364 review hearing.[1] He argues there is insufficient evidence for continued supervision under section 364 because the children, Sophia and Angelica S., were not at risk of sexual abuse.  We affirm the juvenile court's order to continue jurisdiction over the two children.

# II.  PROCEDURAL HISTORY

On September 7, 2011, the Los Angeles Department of Children and Family Services (the department) filed a section 300 petition on behalf of Sophia and Angelica, aged 15 and 14 respectively.  The petition was filed pursuant to section 300, subdivisions (b) and (d).  The petition alleges the father possessed 50 videos and hundreds of images of child pornography on his home computer in August 2011.  At the September 7, 2011 detention hearing, the children were detained.  The juvenile court released the children to the mother and required the father to move out of the family home.  The father was granted monitored visits, at least three times a week.  The parents were ordered to attend individual counseling.

At the October 27, 2011 jurisdictional and disposition hearing, the juvenile court found the children to be dependents of the court under section 300, subdivision (b).  The juvenile court found true the following amended count (b)(1):  "On 8/23/11 and on prior occasions in 2010 and 2011, [the parents] established a detrimental and endangering home environment for the children in that the father possessed 50 videos and hundreds of images of child pornography, including children between the ages of 5 and 12 years old, on the father's computer in the children's home, within access of the children.  The mother allowed the father to reside in the children's home and have unlimited access to

_____

[1]  Further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

2

the children. Such a detrimental and endangering home environment established for the children by the parents and the mother's failure to protect the children endangers the children's physical health and safety and places the children at risk of physical harm, damage, danger, sexual abuse and failure to protect." The juvenile court removed the children from the father's custody. The father was granted unsupervised visits but was to be out of the family home once the minors went to bed. The parents were ordered to participate in individual counseling.

At the June 25, 2012 section 364 review hearing, the juvenile court found conditions still existed to justify continued court jurisdiction by a preponderance of the evidence. At the contested December 14, 2012 section 364 review hearing, the parents wanted the case closed so the father could return home. The children's counsel, Judith Johnson of the Children's Law Center, recommended the juvenile court terminate jurisdiction. Ms. Johnson reasoned department oversight would not benefit the family. After testimony and argument, the juvenile court found conditions existed to justify continued jurisdiction by a preponderance of the evidence. The juvenile court found the children remained at risk because the parents did not acknowledge the child pornography issue. In addition, the father could continue to view child pornography in the home if he moved back home. The juvenile court ordered the department to make unannounced visits at the mother's home. In addition, the department was to ask neighbors whether the father was spending the night at the family home.

The father filed his notice of appeal on December 14, 2012.

### III  EVIDENCE

#### A.  Detention Report

The September 7, 2011 detention report indicated the father was under investigation for viewing and downloading child pornography. The father had no criminal history. The mother reported she was on federal probation for Medi-Cal fraud.

3

On August 23, 2011, the police conducted a search of the family residence and contacted the department because there were two children in the home. One of the children was severely disabled. Sophia S. denied any sexual abuse in the home. She stated there were two computers in the home, one of which is a desktop personal computer in her room. The other computer was her mother's laptop. Sophia reported the father spent a lot of time using the desktop computer to look for a job but she never saw him look at anything inappropriate. Angelica, age 14, had Aicardi Syndrome, cerebral palsy, blindness, profound mental retardation, convulsions, grand mal seizures, spastic quadriplegia and asthma. She was non-verbal and was fed through a gastrostomy tube because of swallowing dysfunction.

The mother stayed home to care for Angelica. Angelica received help from home care nurses for about eight hours a day. The father had been laid off in June and was helping with Angelica's care. The home care nurse, Sophia Rihi, stated, "[T]this is a really nice and normal family." Ms. Rihi did not have any concerns about any abuse or neglect of the children by the parents.

The criminal investigation arose after a third party reported finding child pornography on the father's hard drive. The mother noticed $20,000 that the family had saved for Angelica was missing. The mother found the father had been spending the money on Asian prostitutes, accessing pornography sites. The mother brought the father's hard drive to a computer technician. The technician told the mother there was child pornography on the computer. The mother confronted the father and they got into a "big" fight. The father moved out of the home but later returned when the parents started undergoing counseling.

The father told children's social worker Rachel Walker he looked at child pornography over a year ago for a short time. The father stated, "It was child porn." He deleted everything he had downloaded on the computer. He had never allowed his children to know he did anything wrong. The children were not exposed to anything inappropriate because he deleted everything and they did not have access to it. The father denied ever sexually abusing his children and said they were not in any danger.

4

Ms. Walker also spoke with Detective Charles Schlund, the investigating officer. Detective Schlund stated there was child pornography on one of the computers in the home. All the files were deleted but the police had been able to recover some files. The eight videos they found looked like ads for child pornography with a handful of still images. They depicted Asian females from about 5 to 12 years in age. Detective Schlund reported the father admitted to downloading and viewing child pornography. The detention report states, "According to law enforcement experts in this field, they report that people who view images of child pornography are more likely to become sexual predators than those who do not engage in such behavior."

## B. Jurisdiction/Disposition Report

The October 5, 2011 jurisdiction/disposition report indicated the father's criminal case was pending. Detective Schlund reported: "The case has been rejected by the [District Attorney's] office but I am trying to file with the City Attorney's office. There were many pictures and videos on the files of this computer. They had already been deleted but they were both of adults and children. There were videos and still pictures. It does not seem to be only one time. There was a lot of data on [there]. We have not done further forensic investigation because the case has been rejected by the [District Attorney] but with the initial investigation, there were several files of both child and adult porn found. I think the children are at risk which was the reason why we reported to [the department]."

Sophia denied any sexual abuse or inappropriate behavior by anyone including her father. Sophia stated, "Why would he do something to me, he is my father and I need to see him." The child was very vague with her answers and did not volunteer information.

The mother denied knowing about the child pornography. The mother said: "The court is saying that I knew he was looking at those things on the computer but I never knew until I took the computer to the guy to fix it. I suspected my husband was up to something. There was a girl who was talking to him on [F]acebook and I became jealous

5

and I was very upset with him. We were yelling at each other and I don't know much about the computer. When I was trying to get to the computer after I confronted him, the computer fell and it was damaged. I took it to get fixed and that was the guy who told me about the women that my husband was talking to on the computer. I was more upset at my husband after that and we did argue about it. We went to counseling one time but it was a lot of money. We were trying to fix things. We made an agreement that he was not allowed to use the computer [,] only to pay bills and for it to be when I was present only. Then when the police came was when I found out the other stuff. Now I am aware of it and now he is gone. I would never think that he would do anything to my girls. He is a good father. He might not be the best husband but he is a good father. I would never let him hurt my girls."

In response to the allegations in the petition, the father stated: "I was having a relationship with an Asian model but she was an adult. I did pay for the service on the internet and I realized it was wrong for me to do that. I did see one time a picture of kids. But it was just an advertisement that they sent but I never looked at it again. I deleted it because I did not want the advertisement. I did this stuff on the computer only. I never did anything physical to anyone."

The children's adult half sibling, Mary G., referred to her stepfather as her father. She denied the father did anything inappropriate. Mary stated: "My dad would never hurt my sisters. He is a good provider and always has been. I don't believe he would ever do something bad to anyone."

C. April 26, 2012 Status Review Report

The April 26, 2012 status review report was prepared by children's social worker Courtney Glazer-Mapfumo. The report indicated the father was in partial compliance with the court orders. He had just started individual counseling on March 30, 2012. The father refused to discuss the child pornography allegations with Agatha Lam, his therapist. Ms. Lam indicated she was a marriage and family therapist intern. She did not

6

have a clinical background in working with child sexual abuse or child pornography cases.

The father participated in family preservation services and met with the department social workers on a monthly basis. Ms. Glazer-Mapfumo reported the father had numerous volatile outbursts against: her; another children's social worker, Ron Howard; and the mother. The father cursed and made threatening nonverbal cues directed at other people. The father continued to deny looking at child pornography.

The mother indicated she was concerned about the family's finances. She worried about the family's ability to pay rent and other expenses on a regular basis. The mother also worried her felony conviction would affect her ability to maintain her job as an in home support service worker. She was currently paid the maximum amount of pay at $9 per hour for 283 hours per month to care for Angelica. The family also received 224 hours per month of in home respite nursing care for Angelica. In addition, the family received transportation assistance for Angelica in connection with school-related travel. Angelica also had 2,700 minutes of school nursing support each week. The father was unemployed for most of the review period but now had a telemarketing job working about 32 hours per week.

Ms. Glazer-Mapfumo reported the mother was in compliance with the juvenile court orders. The mother began individual counseling on February 9, 2012. The mother discussed the father's online affair with a woman. This discussion occurred during the mother's individual counseling sessions. The mother's therapist was Kimberly Strum. The mother did not discuss the child pornography allegations with Ms. Strum.

D. June 25, 2012 Interim Review Report

The June 25, 2012 interim review report indicated the father still had not discussed the case issues in therapy. In the attached May 2, 2012 letter, Nicole Chan, the clinical supervisor, and Ms. Lam, the father's therapist, wrote: "We understand that the court wants the counselor to address the case issue of child pornography with the client.

7

However, with his denial of such subject and his guarded attitude, client will not be open to counseling if the counselor keeps bringing up the subject. Therefore, a strategic approach that I suggested to the counselor is to address client's stress management and coping mechanism. So far, the client has engaged in counseling and the rapport with the counselor is progressing. It is hope[d] that he will develop insights about his pattern of stress management and coping, be able to recognize the case issue as a maladaptive means to cope instead of denying it; learn and practice more adaptive coping mechanism." The attached June 13, 2012 letter from Ms. Lam indicated the father continued to deny he viewed child pornography. Ms. Lam stated: "[The father] denied ever watching or downloading child pornography and claimed the deleted files of child pornography found in his computer were downloaded automatically while he was downloading adult pornography without his knowledge. He expressed he has adopted the proper ways to manage his stress by listening to music, watching TV and talking to his wife."

### E.  October 26, 2012 Status Review Report

According to the October 26, 2012 status review report, the mother maintained the father was innocent and did not view child pornography. The report states, "Per mother, it was the 'computer guy' who put the child pornography on her computer when she took it to him to get it fixed." The mother claimed the technician put the child pornography on the computer because she did not respond to his sexual advances. The mother did not believe the father posed any risk to the children. Sophia felt safe with the father and was observed to be very comfortable with him. Sophia did not see a need for further supervision by the department.

The father continued to maintain his innocence and denied viewing child pornography. Ms. Lam, in her October 9, 2012 letter, wrote: "[The father] continued to deny about allegation of downloading and watching child pornography and it had not been the focus of therapy all this time since he claimed he had never done it. He claimed

8

the deleted files of child pornography found in his computer were downloaded automatically while he was downloading adult pornography without his knowledge; he also revealed he believed the computer technician who helped his wife repair the computer might have imported some files to his computer without his knowing. These are his reasoning of how he got involved with the criminal court and [the department]." In an October 17, 2012 letter, Ms. Lam reported the father indicated he stopped downloading and watching adult pornography.

The father was still under criminal investigation for child pornography and had an outstanding warrant for his arrest. The father reported his criminal attorney told him he would not be charged with distribution of pornography. However, the police discovered additional child pornography on the computer.

## F. Last Minute Information to the Court Filings

The October 26, 2012 last minute information for the court reported it was unclear where the father was sleeping overnight for the past week. Detective Schlund visited the father's sister on October 23, 2012. The sister stated the father had not stayed with her in about a week. The brother-in-law reported the father was sleeping in a car. The sister could not say when the father last stayed in her home because she did not keep track of him coming and leaving her home. The father did not have a room in his sister's home and he slept on the couch when he stayed overnight there.

The December 14, 2012 last minute information for the court indicated the father continued seeing his therapist, Ms. Lam, on a regular basis. Ms. Lam, in her December 7, 2012 letter, reported the father was stressed about the criminal and dependency cases. Ms. Lam wrote: "He was well aware of his overeating in coping with his stress and depressive mood as well as his inability to control it. He displayed low motivation to practice self-care since he was primarily relying on overeating and watching TV as his coping mechanism right now. Nevertheless, [the father] appeared highly motivated to perform professionally at work and bring in income for his family. . . . This therapist

9

believes [the father] has shown awareness and remorse for his mistaken choices of stress management in the past and he is showing effort to provide a stable and nurturing home environment to his family. This therapist does not see a risk of [the father's] return home at this point according to the family relationship as he reports. On the other hand, this therapist believes the reunion with his family might help to relieve his depression."

## G. Testimony at Section 364 Review Hearing

At the December 14, 2012 section 364 review hearing, the mother testified she wanted the father back home and the case closed. The mother denied the father had a child pornography issue. The mother testified the father helped her care for Angelica. He lifted Angelica in and out of the shower and her bed and took her to medical appointments. Angelica received 16 hours of nursing care, with nurses from 10:30 pm to 6:30 a.m. overnight, and from 7 a.m. to 3:30 p.m. during the day. The mother believed the children would be safe if the father moved back home. She never saw the father act inappropriately with the children. And she did not believe he posed a risk to them.

## IV. DISCUSSION

### A. Standard of Review

We review the juvenile court's decision to continue jurisdiction over a dependent child for substantial evidence. (*In re N.S.* (2002) 97 Cal.App.4th 167, 172; *In re Eric B.* (1987) 189 Cal.App.3d 996, 1004-1005.) Substantial evidence is relevant evidence which adequately supports a conclusion. It is evidence which is reasonable in nature, credible, and of solid value. (*In re E.B.* (2010) 184 Cal.App.4th 568, 575; *In re J.K.* (2009) 174 Cal.App.4th 1426, 1433.) We draw all reasonable inferences from the evidence and adhere to the principle that issues of fact, weight and credibility are the

provinces of the juvenile court. (*In re Savannah M.* (2005) 131 Cal.App.4th 1387, 1393; *In re Ricardo L.* (2003) 109 Cal.App.4th 552, 564.)

### B. Continued Supervision Under Section 364

Section 364, subdivision (a) provides in relevant part, "Every hearing in which an order is made placing a child under the supervision of the juvenile court pursuant to Section 300 and in which the child is not removed from the physical custody of his or her parent or guardian shall be continued to a specific future date not to exceed six months after the date of the original dispositional hearing. . . ." Section 364, subdivision (c) states: "After hearing any evidence presented by the social worker, the parent, the guardian, or the child, the court shall determine whether continued supervision is necessary. The court shall terminate its jurisdiction unless the social worker or his or her department establishes by a preponderance of the evidence that the conditions still exist which would justify initial assumption of jurisdiction under Section 300, or that those conditions are likely to exist if supervision is withdrawn. Failure of the parent or guardian to participate regularly in any court ordered treatment program shall constitute prima facie evidence that the conditions which justified initial assumption of jurisdiction still exist and that continued supervision is necessary." At the section 364 hearing, the issue before the court is whether continued supervision is necessary. (*Bridget A. v. Superior Court* (2007) 148 Cal.App.4th 285, 304; *In re N.S., supra,* 97 Cal.App.4th at pp. 172-173.)

The father argues there is insufficient evidence to support the juvenile court's continued jurisdiction. He argues: the children were not at risk of sexual abuse; Sophia felt safe with her father and was comfortable around him; Angelica received 24-hour care from the mother and nurses; Ms. Strum believed the mother appeared protective of the children; he participated in individual counseling; he admitted to Ms. Lam he watched adult pornography and engaged in online dating to cope with stress, loneliness and

11

insecurity; he learned new methods to manage stress and stopped watching adult pornography; and Ms. Lam believed there was no risk if the father returned home.

We conclude substantial evidence supports the juvenile court's continued jurisdiction over the children. The parents refused to address the child pornography issue during their individual counseling sessions. The father initially admitted he downloaded and viewed child pornography but later denied it. The mother maintained the father was innocent. The mother asserted the computer technician put the child pornography on the computer because she did not respond to his sexual advances. The mother did not acknowledge the father's behavior placed the children at risk of harm. Instead, the mother expressed concern about the father's online affair and the family's financial struggles. The parents' lack of progress in acknowledging and addressing the case issues supports continued supervision by the juvenile court.

## V.  DISPOSITION

The findings and order made at the December 14, 2012 status review hearing are affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

TURNER, P. J.

We concur:

MOSK, J.

KRIEGLER, J.

12