Filed 10/16/13  In re Maria R. CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re MARIA R., et al., Persons Coming Under the Juvenile Court Law. | B247266 (Los Angeles County Super. Ct. No. CK96186) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. LUIS R., SR., et al., Defendants and Appellants. | |

APPEAL from the orders of the Superior Court of Los Angeles County, Donna Levin, Juvenile Court Referee.  Affirmed.

Lori Siegel, under appointment by the Court of Appeal, for Defendant and Appellant Luis R.

Karen B. Stalter, under appointment by the Court of Appeal, for Defendant and Appellant Maria C.

John Krattli, County Counsel, James M. Owens, Assistant County Counsel, and Terry T. Truong, Deputy County Counsel, for Plaintiff and Respondent.

Luis R., Sr., (father) and Maria C. (mother) appeal from a January 15, 2013 order declaring their three minor children dependents of the court under Welfare and Institutions Code section 300, subdivisions (b) and (j).[1] Appellants contend substantial evidence does not support the jurisdictional finding of a substantial risk of serious physical harm as a result of appellants' failure or inability to adequately supervise or protect their minor children. In addition, father contends that if the dependency court lacks jurisdiction, this court must also reverse the disposition order. We conclude substantial evidence supports both jurisdictional findings and affirm the orders.

### STATEMENT OF FACTS AND PROCEDURE

Three minors are the subject of this dependency proceeding: 15-year-old Maria, 9-year-old Jessica, and Josue, who was 19 months old at the time of the initial detention in October 2012. At that time, father and mother lived together with the three minors, two adult children (Brenda and Luis, Jr. [hereafter "Luis"]), and one grandchild. Proceedings in this case commenced after Luis, who suffers from mental illness issues, twice tried to suffocate Josue with a blanket.

On October 24, 2012, the Department of Children and Family Services (Department) detained the three minors from parental custody and filed a petition alleging jurisdiction under section 300, subdivisions (a), (b), and (j), based on multiple factual allegations, including (1) parents' actions permitting Luis to reside in the home after he had attempted to smother Josue, (2) Luis's drug abuse, and (3) father's alcohol abuse. Various reports submitted by the Department describe the factual circumstances leading up to the initial detention, summarized below.[2]

---

[1] All further statutory references are to the Welfare and Institutions Code, unless otherwise indicated.

[2] The Department has previously investigated the family on eleven separate occasions between 1999 and 2010. Although the Department found most of the

allegations unfounded or unsubstantiated, when considered with the current facts, this ongoing pattern is relevant to determining whether substantial evidence supports the court's finding that minors were at risk of serious harm.

1. On June 5, 1999, the Department investigated an alleged incident where Luis stated Mother had hit him, but found the allegations unsubstantiated.

2. On January 9, 2001, the Department substantiated allegations that both mother and father placed Luis, Maria, and Brenda at substantial risk during an incident where Luis lost his temper, and mother began slowly driving the car away while Luis was outside the car. The Department provided the family with voluntary services and did not file a petition. Mother was convicted of violating Penal Code section 273, subdivision (a), willful cruelty to a child.

3. On November 13, 2001, the Department looked into allegations that father physically abused Luis, Maria, and Brenda, but the allegations were found to be either unfounded (with respect to Luis and Maria) or inconclusive (with respect to Brenda).

4. Around February 3, 2002, Brenda reported that father pulled her hair. The Department investigated the report and considered whether Luis and Maria were also at risk of physical abuse but deemed the allegations unfounded.

5. On October 4, 2002, the Department investigated allegations that father physically and sexually abused Brenda by touching her breasts and slapping her face; the Department also investigated whether Luis and Maria were at risk of abuse. The allegation of physical abuse was deemed unfounded, and the allegation of sexual abuse was found inconclusive.

6. On January 13, 2003, the Department deemed unfounded allegations that Luis, Maria, and Brenda were at substantial risk of abuse, even though father was still in the home, despite an obligation to move out based on earlier concerns about inappropriate sexual touching of Brenda.

7. On October 8, 2004, the Department inquired about unfounded allegations of emotional abuse, based on father's drinking and yelling profanities at Brenda and mother.

8. On May 2, 2007, the Department concluded that allegations of verbal and physical abuse of Brenda by mother were unfounded.

9. On December 4, 2008, the Department concluded that allegations of physical abuse of Jessica were unfounded.

3

Luis has a history of mental illness, drug use, and violence in the home, beginning around 2010.  He was arrested in June 2010, after becoming violent in the family home.  During the arrest, police found drugs and $20,000 in stolen jewelry.  Luis was in and out of juvenile hall and drug treatment from June 2010 until February 2012.  When he was discharged in February 2012, he was diagnosed with adjustment disorder, anxiety, psychotic disorder not otherwise specified, and poly-substance dependence.  However, he refused any medication or ongoing therapy.

Luis began hearing voices and suffering hallucinations beginning five or six months before the initial detention.  He admitted to attempting suicide in the apartment around the same time he first attempted to smother Josue, about two weeks before the Department detained the minors.

The first time Luis attempted to smother his brother, he covered Josue with a blanket, claiming he was trying to "give him his power."  Brenda realized that Luis was trying to suffocate Josue and called mother.  Mother became upset because Josue does not like to have his face covered with a blanket, and she was concerned he could have difficulty breathing.  Josue was very scared and tearful.  Although mother stated she told Luis to leave the home immediately, she denied kicking him out of the house; rather, she asked him to leave while she calmed down.  She did not tell father about this incident

---

10.  On June 24, 2010, the Department substantiated allegations that Luis physically abused Maria by hitting her with a clenched fist on her face, neck, and arms hard enough to leave bruises.  At the time of the incident, neither mother nor father were home, and Luis was found in possession of marijuana.  Luis was arrested and placed on probation.  The investigative notes state:  "Luis was arrested and detained under the Probation Department where he remains placed and where he is receiving rehabilitation services for his substance abuse.  Luis no longer resides in the home and at this time he does not present a risk to his siblings.  The parents are cooperating with the Probation Department and receiving support services through the agency."

11.  On March 22, 2011, the Department concluded that allegations of emotional and physical abuse were unfounded.  Department's investigation revealed a confrontation between father and Luis, due to Luis's drug use.

4

because she did not consider it to be "a dangerous thing." Luis left but returned a few hours later. According to Brenda, Luis always returned to the home, sometimes entering through a window, and there was nothing the family could do about it.

On October 16, 2012, Luis again covered Josue with a blanket, attempting to suffocate him. Mother was in another room doing laundry when she heard Josue screaming. Mother came into the room, saw that Luis had covered Josue's entire face and body, attempting to suffocate him. Luis said that he was "giving [Josue] his power." Mother pushed Luis away and told Brenda to call the police. Luis was arrested and placed on a 72-hour psychiatric hold at Olive View Hospital.

The Department interviewed family members on October 17, 2012. Mother stated she planned to obtain a restraining order against Luis to prevent him from returning home. Luis has not acted violently towards his other minor siblings, Maria and Jessica. Maria denied being afraid of Luis, but Jessica said she was scared of Luis when he yelled or talked about the devil.

On October 19, 2012, the Department called mother to inform her that once Luis was released from the hospital, he would be arrested for assault with a deadly weapon for attempting to suffocate Josue. Mother had not yet obtained a restraining order but said she would do so the following week. Mother recognized Luis needed psychiatric help but also stated, "Had I know[n] this would happen, I would not have called."

By October 23, 2012, mother still had not obtained a restraining order against Luis. The social worker informed mother that the district attorney might reject the criminal case against Luis. She explained that unless a restraining order was in place, the Department might detain the minors from parental custody. Mother told the worker that she loved all her children, "including the sick one," and she would not throw her son Luis into the street and abandon him.

The next day, the district attorney rejected the case against Luis due to insufficient evidence. Mother failed to corroborate the information the police had about the incident, nor did she confirm that Luis had "smothered" Josue. Mother advised Luis not to speak to the detectives and to request an attorney, and the detective opined that she would

5

continue covering for Luis. According to the detective handling the matter, "[i]t is evident that she (mother) will continue covering for him. The likelihood of this occurring again is very likely."

The Department detained Maria, Jessica, and Josue on October 24, 2012. Mother obtained a temporary restraining order against Luis a day later. She has been unable to serve the order on Luis because she has not seen him since his release from the hospital.

Explaining the delay in obtaining the restraining order, mother stated, "although she knows . . . Luis is mentally ill, she never believed he was a danger to her or her children, as he was never violent towards her or anyone in the home." Mother said she had "tried to get help so many times before for [Luis]." She was told several times that nothing could be done until something happened. Father expressed frustration that police were unwilling to arrest Luis earlier, and that it took the attempted suffocation to get police to act.

Both mother and father expressed recognition that Luis has mental health issues and needs treatment. Parents are regularly attending meetings of the National Alliance on Mental Illness (NAMI), increasing their knowledge of how to handle their son's mental illness. Parents agree that Luis cannot reside in the family home, but they want to ensure that he is in a safe location and receiving proper treatment. The family has a plan to keep Luis out of the family home if he does reappear.

The dependency court sustained two counts under section 300, subdivision (b) and one under subdivision (j) at the January 15, 2013 jurisdiction hearing. In the first allegation under section 300, subdivision (b), the court found Luis twice attempted to suffocate Josue with a blanket, parents knew of the physical abuse, and they failed to protect Josue by allowing Luis to reside in the home and have unlimited access to the child, placing the three minor children's physical health and safety at risk. The court sustained the second allegation under subdivision (b), based on findings that parents failed to protect and placed the children's physical health, safety, and well being in danger by allowing Luis, who the parents knew suffered from mental and emotional problems, to reside in the children's home and have unlimited access to children. The

6

allegations under subdivision (j) were similar to the first allegation in subdivision (b). Other allegations were dismissed.

At the disposition hearing, the dependency court ordered the children returned to parents. The court found an absence of clear and convincing evidence warranting removal of the children from parental custody.

## DISCUSSION

Father and mother contend substantial evidence does not support the dependency court's jurisdictional findings under section 300, subdivisions (b) and (j). We disagree.

### Standard of Review

"On appeal, the 'substantial evidence' test is the appropriate standard of review for both the jurisdictional and dispositional findings. [Citations.]" (*In re J.K.* (2009) 174 Cal.App.4th 1426, 1433.) We must uphold the jurisdictional findings if, "after reviewing the entire record and resolving all conflicts in favor of the respondent and drawing all reasonable inferences in support of the judgment, we determine there is substantial evidence to support the findings." (*In re Monique T*. (1992) 2 Cal.App.4th 1372, 1378.) We resolve all conflicts in support of the determination, examine the record in a light most favorable to the dependency court's findings and conclusions, and indulge all legitimate inferences to uphold the court's order. (*In re Brison C.* (2000) 81 Cal.App.4th 1373, 1379; *In re Tania S*. (1992) 5 Cal.App.4th 728, 733-734.)

### Substantial Evidence Supports a Finding of Jurisdiction Under Section 300, Subdivision (b)

Section 300, subdivision (b), provides in pertinent part: "The child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a

7

result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child, or the willful or negligent failure of the child's parent or guardian to adequately supervise or protect the child from the conduct of the custodian with whom the child has been left . . . . The child shall continue to be a dependent child pursuant to this subdivision only so long as is necessary to protect the child from risk of suffering serious physical harm or illness."

In order to establish jurisdiction under subdivision (b) of section 300, there must be evidence of (1) neglectful conduct by the parent; (2) causation; and (3) serious physical harm or illness to the minor, or a substantial risk of such harm or illness. (*In re Rocco M.* (1991) 1 Cal.App.4th 814, 820 (*Rocco M.*).) Appellants contend that the record lacks substantial evidence to support finding either neglectful conduct or a substantial risk of harm.

First, parents contend there is insufficient evidence of neglectful conduct by the parents, citing *In re Precious D.* (2010) 189 Cal.App.4th 1251 (*Precious D.*). In *Precious D.*, the minor engaged in various activities harmful to herself, including running away, skipping school, and associating with the "wrong crowd," and there was no evidence of neglectful conduct by the mother. (*Id.* at pp. 1254-1259.) Here, father and mother reason the evidence does not support a finding of jurisdiction under section 300, subdivision (b), because they are good parents and have taken steps to ensure their minor children are cared for.

The facts of this case are significantly different from those in *Precious D.* The dependency court acknowledged parents' positive characteristics at the jurisdiction hearing, but the family also has an extensive history of child welfare referrals dating back to 1999. Luis twice covered Josue with a blanket in an attempt to suffocate him. The second event was serious enough that the family had to call police, and Luis was placed on a 72-hour psychiatric hold. The two successive attempts by Luis to suffocate Josue, combined with the facts that mother minimized the seriousness of the first suffocation incident, expressed regret at having called the police, and made statements that were interpreted as "covering" for her mentally ill son provides substantial evidence to

conclude parents were neglectful. Parents' actions in permitting a mentally-ill sibling to continue residing with the minors, in light of his history of hallucinations, delusional behavior, a prior suicide attempt, and the first suffocation incident constitutes substantial evidence that parents failed to protect their minor children from a risk of serious harm.

Second, parents contend because Luis has been missing and outside the home since October 2012, there is insufficient evidence to find a substantial risk of serious harm. Past infliction of abuse or neglect does not necessarily provide a basis for jurisdiction under section 300, subdivision (b); there must be some reason to believe the abusive conduct may continue in the future. (*In re J.N.* (2010) 181 Cal.App.4th 1010, 1025; *Rocco M., supra*, 1 Cal.App.4th at p. 824.) Although a parent's past conduct may be probative of current conditions, dependency jurisdiction depends on a showing that the circumstances *at the time of the hearing* subjected the minor to the specified risk of harm.[3] (*Rocco M., supra*, at p. 824.) While we may draw inferences based on the evidence, speculation, and conjecture alone do not constitute substantial evidence of risk of harm to the minors. (*In re Savannah M.* (2005) 131 Cal.App.4th, 1387, 1394-1395.)

Parents highlight the fact that after Luis was released from the psychiatric hold following his attempt to suffocate Josue, they did not have any contact with him, and his whereabouts remained unknown during the two-and-a-half months between the initial detention hearing and the jurisdiction and disposition hearing on January 15, 2013. Parents argue the dependency court could not find a current risk of harm in light of Luis's continued absence. In *In re Carlos T.* (2009) 174 Cal.App.4th 795, 805-806, the appellate court rejected a father's argument that there was no substantial risk of abuse

---

[3] Parents both point out a split of authority on whether a court must find a current risk of harm *at the time of the jurisdictional hearing* in order to properly exercise jurisdiction. (See, e.g., *Rocco M., supra*, 1 Cal.App.4th at p. 824 [current risk of harm required to support a finding of jurisdiction]; *In re J.N., supra,* 181 Cal.App.4th at pp. 1023-1024 [requiring current risk of harm]; but see *In re J.K.* (2009) 174 Cal.App.4th 1426, 1435 [prior incident may satisfy jurisdictional requirements, even absent a finding of current risk of harm].) Because the record contains substantial evidence to support a finding of current risk of harm, we need not examine whether the dependency court's finding would be valid absent such a finding.

where he was incarcerated at the time of the jurisdictional hearing and therefore had no access to the children. The appellate court pointed out that father had not yet been sentenced on his sexual molestation convictions, and he still had the right to appeal his convictions. In light of the father's failure to even acknowledge the abuse or harm, the court found it was likely he would continue to abuse the children if he had access to them. (*Ibid*.)

Here, we can reasonably infer that Luis may return home and harm the minor children. We start with Luis's past conduct, including a documented history of mental illness coupled with two violent acts towards Josue, a contemporaneous suicide attempt, and an ongoing refusal to accept medications or therapy. It is reasonable to infer from Luis's absence that he has not been receiving treatment and in all likelihood, his condition has worsened. There is also evidence that Luis has returned home after other incidents in the past, and he does not have any other refuge, thus increasing the likelihood that he will eventually return home. As his sister Brenda noted, "He always comes back. He comes in through the window. Even if we lock the doors, he comes in through the windows. We can't do anything about it." Father also made statements demonstrating the lack of viable alternatives: "He needs to be in jail for a good year. That will set him straight. That will give us some peace. If not, we will go to Mexico. We can't be living like this, thinking that he's going to come over here, and come in through the windows." Even though parents are attending NAMI meetings and state that they plan to call police if Luis arrives at home, earlier statements provide a basis for questioning parents' resolve. Mother told social workers on October 17, 2012, that she planned to obtain a restraining order, but ultimately did not act until the day *after* her children were detained a week later.She has also expressed regret at having called the police and refused to assist with Luis's prosecution. Finally, because Luis was never served, there is no restraining order in place to prevent him from entering the home.

These facts constitute substantial evidence supporting the jurisdictional finding under section 300, subdivision (b).

## Substantial Evidence Supports a Finding of Jurisdiction Under Section 300, Subdivision (j)

Section 300, subdivision (j), provides: "The child's sibling has been abused or neglected, as defined in subdivision (a), (b), (d), (e), or (i), and there is a substantial risk that the child will be abused or neglected, as defined in those subdivisions. The court shall consider the circumstances surrounding the abuse or neglect of the sibling, the age and gender of each child, the nature of the abuse or neglect of the sibling, the mental condition of the parent or guardian, and any other factors the court considers probative in determining whether there is a substantial risk to the child."

Because the jurisdictional finding under subdivision (b) is supported by substantial evidence, we need not consider whether jurisdiction also exists under subdivision (j). "When a dependency petition alleges multiple grounds for its assertion that a minor comes within the dependency court's jurisdiction, a reviewing court can affirm the [trial] court's finding of jurisdiction over the minor if any one of the statutory bases for jurisdiction that are enumerated in the petition is supported by substantial evidence. In such a case, the reviewing court need not consider whether any or all of the other alleged statutory grounds for jurisdiction are supported by the evidence." (*In re Alexis E.* (2009) 171 Cal.App.4th 438, 451.)

Nevertheless, substantial evidence supports the jurisdictional findings under subdivision (j). The two suffocation incidents provide substantial evidence that Josue suffered harm as a result of parents' failure to protect him from Luis. Maria and Jessica are older than Josue and deny being afraid of Luis, but there is a substantiated history of violence in the home from which the dependency court could reasonably infer that any of the three siblings could be at risk of harm under section 300, subdivision (a) or (b). In 2010, the Department substantiated allegations that Luis hit Maria with a clenched fist on her face, neck, and arms hard enough to leave bruises. Luis's history and mental illness indicate his potential presence in the home place all the minor children at risk of physical

11

harm.  We conclude substantial evidence supports the findings under section 300, subdivision (j).

## DISPOSITION

The orders are affirmed.


KRIEGLER, J.


We concur:


TURNER, P. J.


KUMAR, J.[*]

---

[*]     Judge of the Los Angeles County Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.