Filed 3/20/14  In re J.F. CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re J.F. et al., Persons Coming Under the Juvenile Court Law. | B250987 (Los Angeles County Super. Ct. No. CK99102) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. BRITTANY H., Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Marilyn M. Mordetzky, Temporary Judge.  (Pursuant to Cal. Const., art. VI, § 21.)  Affirmed.

Terrence M. Chucas, under appointment by the Court of Appeal, for Defendant and Appellant.

John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel and Stephen D. Watson, Deputy County Counsel for Plaintiff and Respondent.

Appellant Brittany M. ("mother"), the mother of the minor children J.F. and J.W., challenges the juvenile court's assumption of jurisdiction over her children, as well as its decision to remove them from her home, based on its finding that her substance abuse placed the children at substantial risk of serious bodily harm or illness. Finding no error, we affirm the judgment.

FACTUAL AND PROCEDURAL SUMMARY

J.F. (born June 2004) and J.W. (born December 2010) lived with mother and K.W., the younger child's (father).[1] The children came to the attention of the Department of Children and Family Services ("DCFS") due to allegations of general neglect. A social worker visited the family home, which was cluttered and disorganized and had no running hot water. Mother explained that the family had been warming water on the kitchen stove and in the microwave in order to bathe until the landlord fixed the problem. In addition, mother and father admitted to using marijuana, but claimed that they usually smoked it when the children were at school or day care. They both agreed to submit to random drug testing.

J.F. told the social worker she knew what drugs were, but had not seen them in the house; she denied knowledge of mother or father's use of drugs or of observing them under the influence of any substances. Both children appeared well groomed, with no signs of abuse.

On August 9, 2012, mother tested positive for marijuana, and father tested positive for both marijuana and cocaine. They agreed to participate in a voluntary family maintenance plan. A few weeks thereafter, father moved out of the house. Mother told the social worker they had not been getting along. By late September 2012, the hot water was functioning.

The social worker visited J.F.'s school on October 12, 2012, and December 10, 2012, but J.F. was not in attendance on either occasion. She also visited the family home

---

[1]     Father did not appeal the juvenile court's orders and thus is not a party to these proceedings.

on four occasions over the next few months, but no one was ever there. Mother and the children were finally at home when the social worker visited on February 25, 2013. Mother explained that she had been spending less time at home due to her work schedule, as well as "having issues" with her neighbors and indicated that she had to change her cell phone number. The social worker explained to her the importance of contacting DCFS if the family was going to be away from the home for an extended time period.

On November 21, 2012, DCFS met with mother and father, and they again agreed to participate in a voluntary program consisting of parenting classes, substance abuse counseling, on-demand drug testing, individual counseling, and psychiatric and medical evaluations.

Mother promised to bring the children to the social worker's office on April 8, 2013, but failed to do so. On the same day, mother tested positive for marijuana and cocaine. She said that her telephone had been disconnected. The social worker informed her that the case could no longer be voluntary, and mother consented to the removal of the children from her care. They were then taken into protective custody and placed in foster homes.

On April 22, 2013, DCFS filed on behalf of the children a two-count petition under Welfare and Institutions Code[2] section 300, subdivision (b). The first count alleged that mother had a history of illicit drug use and was a current user of cocaine and marijuana. Count one specifically alleged that mother was under the influence of drugs in 2012 and 2013 when the children were in her care. It also alleged that while mother was receiving remedial services from DCFS she tested positive for marijuana and cocaine.

At the detention hearing on April 22, 2013, the juvenile court made a prima facie finding that the children were persons described by section 300, subdivision (b). It also found that substantial danger existed to the physical or emotional health of the children and there were no reasonable means to protect the children without removing them from

---

[2] Further statutory references are to this code.

3

the care of mother and father. The children were placed in foster care pending the next hearing. Mother and father were granted monitored visitation, and the court directed DCFS to provide the parents with referrals for drug testing, and calendared an adjudication hearing

When re-interviewed by the social worker on May 9, 2013, J.F. stated that she had never seen mother or father use drugs. She did not know what drug paraphernalia looked like. She stated that the previous social worker told her that mother used drugs. She said that mother "used to smoke weed," but now smoked only cigarettes. She commented that father (her stepfather) had raised her and they had been a family for seven years. J.F.'s foster mother told the social worker that J.F. said her mother "used to use" drugs.

Mother indicated that her positive cocaine test result of April 8, 2013 was due to someone sprinkling cocaine on the marijuana she smoked. Mother stated that except for this one time when she "unknowingly" smoked marijuana laced with cocaine, she has never used cocaine. The social worker was able to locate J.F.'s biological father, Maurice F., who denied knowledge of mother using illicit drugs. He had not seen his daughter in two years.

The second count of the petition alleges that father had a history of illicit drug use and was a current user of cocaine and marijuana. This count specifically alleged that father was under the influence of drugs in 2013 when he tested positive for cocaine and marijuana. It also alleged that mother knew of father's drug use and failed to protect the children.

At the detention hearing, the jurisdictional and dispositional issues were set for a contested hearing. The juvenile court appointed a "Court Appointed Special Advocate" or "CASA" for the children. The court also ordered DCFS to file a supplemental report addressing mother's and father's drug tests. DCFS expressed the following concerns regarding the fitness of mother to take care of the children: The parents' long term use of marijuana; mother allowing father to care for the children despite her agreement with DCFS that father's contact with the children would be monitored; the failure of either parent to comply with the case plan or to maintain regular contact with DCFS; mother's

unsatisfactory drug tests results including two positive results for marijuana and one for cocaine, three failures to appear, and an insufficient sample to test; and DCFS's inability to verify whether mother was participating in a drug treatment plan due to mother's failure to maintain contact with the Department.

The jurisdictional and dispositional hearing commenced on August 7, 2013, and concluded on August 13, 2013. At the conclusion of the hearing the juvenile court sustained both counts under subdivision (b) of section 300 and removed custody of both children from mother. It also removed custody of J.W. from father. In sustaining the petition the juvenile court stated mother "has a history of illicit drug use and is a current user of cocaine and marijuana, which renders the mother incapable of providing regular care of the children. On prior occasions in 2012 and 2013, the mother was under the influence of illicit drugs, while the children were in mother's care and supervision. On 04/09/2013, the mother had a positive toxicology screen for cocaine and marijuana. On 08/09/2012, the mother had a positive toxicology screen for marijuana. Remedial services failed to resolve the family's problems, in that the mother continued to use illicit drugs. Such illicit drug use on the part of the mother endangers the children's physical health and safety and places the children at risk of physical harm and damage."

The juvenile court found that J.F.'s presumed father, Maurice F., was a non-offending parent, and placed J.F. with her father, who lived in the Bay Area. Maurice F. was ordered to be present with J.F. at the six month review hearing.

Mother was ordered to submit to random drug tests on a weekly basis, and if she missed a drug test or tested positive for illegal drugs, she was to complete a drug rehabilitation program. The court also ordered mother to attend counseling and to complete a parenting class. The court ordered at least three hours per week of monitored visits with J.F.

An interim review hearing was scheduled so that the court could review mother's drug test results. The court granted DCFS discretion to release J.F. to mother prior to the interim hearing.

5

ISSUES ON APPEAL

1. *The jurisdictional findings and order*

Mother argues that there was no substantial evidence presented to the juvenile court to support a finding of jurisdiction over the children under count b-1 of the petition based on mother's alleged substance abuse.

Juvenile court decisions regarding jurisdiction are reviewed under the "sufficiency of the evidence" standard. (*In re In re J. K.* (2009) 174 Cal.App.4th 1426, 1433.) The record is reviewed to determine if there was any substantial evidence presented, whether or not contradicted, which supports the juvenile court's decision. (*In re Kristin H.* (1996) 46 Cal.App.4th 1635, 1649.) All conflicts must be resolved in favor of the respondent and all legitimate inferences indulged in to uphold the judgment, if possible. (*In re Katrina C.* (1988) 201 Cal.App.3d 540, 547.) The ultimate test is whether it is reasonable for a trier of fact to make the ruling in question in light of the whole record. (*Roddenberry v. Roddenberry* (1996) 44 Cal.App.4th 634, 652.) On appeal, the appellant has the burden to establish the lack of sufficient evidence. (*In re L.Y.L.* (2002) 101 Cal.App.4th 942, 947.)

Section 300, subdivision (b) provides that a child comes within the jurisdiction of the juvenile court if "[t]he child has suffered, or if there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent to adequately supervise or protect the child, . . . or by the inability of the parent or guardian to provide regular care for the child due to the parent's or guardian's mental illness, developmental disability, or substance abuse." (§ 300, subd. (b).) It is clear from a reading of this statute that its purpose is not only to protect children who are currently being neglected but also to ensure the "safety, protection, and physical and emotional well being of children who are at risk of [such] harm." (See § 300.2; *In re Heather A.* (1996) 52 Cal.App.4th 183, 194-196.) The basic question under section 300 is whether circumstances at the time of the hearing subject the minor to a defined risk of harm. (*In re James R.* (2009) 176 Cal.App.4th 129, 135; *In re Nicholas B.* (2001) 88 Cal.App.4th 1126, 1134.)

No evidence was presented to the juvenile court at the time of the hearing to prove that the children were then suffering from or had previously suffered "serious physical harm or illness." Therefore, the question presented to this reviewing court is, was substantial evidence presented to the juvenile court to prove: (a) at the time of the hearing, there was a "substantial risk that the children will [in the future] suffer serious physical harm or illness, as a result of the failure or inability of his or her parent to adequately supervise or protect the child, or by the inability of the parent or guardian to provide regular care for the child, due to the parent's or guardian's . . . substance abuse."

The substance of the case DCFS presented to the juvenile court consisted of mother's admitted long time and heavy recreational use of marijuana (4 times per week for 15 years); testing positive for marijuana and cocaine during the pendency of the petition despite her agreement to stop using drugs, as well as her failure to appear at several scheduled drug tests; and her use of marijuana in the presence of the children.

Mother relies on *In re Drake M*. (2012) 211 Cal.App.4th 754 ("*Drake*"), to argue that the evidence does not support a jurisdictional finding based on her drug use.

In *Drake*, the appellate court reversed the jurisdictional finding as to one count of the petition which alleged that the father, a current user of legal marijuana, was incapable of providing regular care and proper supervision of the minor. The record established that the minor's father had a bona fide medical reason and a valid prescription for the use of marijuana, never tested positive for any illicit drug other than cannabis, and never failed to appear for any drug test appointment. He also had alternative caretakers available to care for the child, never smoked in the home, even outside of the child's presence, and DCFS reported that there was plenty of food in the house and the utilities were all working. The *Drake* court explained that "without more, the mere usage of drugs by a parent is not a sufficient basis on which dependency jurisdiction can be found. [Citations.]" (*Drake, supra,* 211 Cal.App.4th at pp. 764-765.) Thus, while father was a substance *user*, there was no evidence he was a substance *abuser*.

The facts of this case are markedly different from those in *Drake*. Here, mother acknowledged a long history of recreational use of marijuana, had no valid prescription

7

for the drug or medical reason to ingest it, and tested positive for cocaine and then blamed her use of cocaine on others. J.F.'s statements that mother "used to smoke weed" suggest that mother used the substance in her child's present, although she denied using it in the house. Her inability to refrain from use of the drug even while promising to do so and facing severe consequences for failing to do so exhibits behavior which falls within the definition of "substance abuse" contained in The American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders (4th rev. ed. 2000), that is, "continued substance use despite having persistent or recurrent social or interpersonal problems caused or exacerbated by the effects of the substance." All of these factors support the juvenile court's conclusion that mother had a substance abuse problem which affected her judgment, and thus her ability to adequately supervise and protect her children. Moreover, under *Drake,* the fact that mother met the definition of a substance abuser was prima facie evidence of her inability to provide regular care to J.W., who was two years old when this case began. (*Drake*, *supra*, at p. 767.)

2. *The juvenile court's dispositional orders*

On appeal, a removal order will be upheld if it is supported by substantial evidence. (*In re Javier G.* (2006) 137 Cal.App.4th 453, 463.) The juvenile court is empowered to remove a dependent child from the physical custody of the parent with whom the child resided when the section 300 petition was filed, if the court finds by clear and convincing evidence that "There is or would be substantial danger to the physical health, safety, protection, or physical and emotional well being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's or guardian's physical custody. . . ."[3]

---

[3]     The juvenile court's finding was as follows: "Court finds by clear and convincing evidence pursuant to Welfare & Institutions Code section 361(d) that there is a substantial danger or would be if these children were returned home to the physical custody of . . . father and . . . mother, and there are no reasonable means by which the

8

In deciding whether to remove a child from parental custody, the juvenile court is required to determine if reasonable efforts were made to prevent or eliminate the need for removal. (§ 361, subd. (d); *In re Basilio T.* (1992) 4 Cal.App.4th 155, 171.) Once jurisdiction is established, the juvenile court is not limited to the contents of the sustained petition when making dispositional orders, and may consider evidence beyond the sustained petition to fashion an order consistent with the best interests of the child. (*In re Rodger H.* (1991) 228 Cal.App.3d 1174, 1183.)

Mother argues that the juvenile court should have allowed the children to remain in her custody with a program of supervision. But, the juvenile court could not be assured that the mother would comply with a program of supervision.[4] DCFS had previously entered into two voluntary family maintenance ("VFM") agreements with mother and father, but they both failed to comply with the terms thereof. Mother first agreed to participate in a VFM on August 14, 2012, but she did not comply with the case plan, or maintain regular contact with DCFS. Mother again agreed to a VFM plan on November 21, 2012, but the social worker was unable to contact mother until February 25, 2013, when mother explained she had changed her cell phone number and had been spending less time at home due to "having issues" with her neighbors. Though mother agreed as part of the second VFM to submit to on-demand drug testing, she failed to drug test until April 10, 2013, when she tested positive for marijuana and cocaine. She then

children's physical or emotional needs can be protected without removing them from the parents' physical custody. That analysis is based on the fact that the court believes that, given the conduct of the parents, there are no services or orders that can be put in place to ensure that the parents will actually comply with those orders."

[4] During the disposition hearing the Court stated in response to mother's request for custody of the children: "The only problem is . . . how is the court going to monitor this if they don't test? Here is part of the problem is the parents haven't been cooperative. . . . If the mother was willing to test and I could be assured that she would do that, but why would I return the children to either of these parents if they are not going to test because all that is going to cause is the department going out there and removing the children, which I don't want to do. This is not a real difficult case here. It's just a matter of participation and cooperation, is really what we're looking at, and we're not getting it."

failed to appear for scheduled drug tests in June and July of 2013. Thus the court expressed its lack of confidence that mother would comply with any program of supervision for the protection of the children required by the court as a condition to having custody of the children. Thus, removal of the children was the only realistic option available to the juvenile court to ensure the children's protection.[5]

In short, mother has failed to establish that the disposition order was an abuse of the juvenile court's discretion.

DISPOSITION

The juvenile court's jurisdictional findings and dispositional orders are affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

MINK, J.[*]

We concur:

TURNER, P. J.

MOSK, J.

---

[5] The juvenile court recognized the importance of family reunification; it stated: "Both mother's random and on-demand drug tests are every other week. Just in the abundance of caution, to assure that if mother's testing, father is testing, and everything is looking good, I am going to make a referral to family preservation, so that referral will be done. So if we come back in two months and everything is – and everyone is cooperating, that we can look to liberalizing this case, and, if not, return to the parents. Department has discretion to release to the parents prior to the next progress report date, and the 21e will be on February 11, 2014."

[*] Retired Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.