Filed 9/10/21 In re T.J. CA2/4

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re T.J., Person Coming Under the Juvenile Court Law. | B308488 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>E.J.,<br><br>    Defendant and Appellant. | Los Angeles County Super. Ct. No. 18CCJP01289 |

APPEAL from an order of the Superior Court of Los Angeles County, Daniel Zeke Zeidler, Judge. Affirmed.

Jacques Alexander Love, under appointment by the Court of Appeal, for Defendant and Appellant.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, Jane Kwon, Deputy County Counsel, for Plaintiff and Respondent.

# INTRODUCTION

The juvenile court exercised jurisdiction over T.J., the child of E.J. (mother) and K.J. (father),[1] pursuant to Welfare and Institutions Code[2] section 300, subdivision (b)(1), finding she was at substantial risk of serious physical harm due to mother's inappropriate plan for T.J.'s care while mother was incarcerated. Mother left T.J. with maternal great-uncle, who is unable and unwilling to provide T.J. with ongoing parental care and supervision.[3] The court removed T.J. from the parents under section 361 and placed her under the supervision of the Department of Children and Family Services (Department).

On appeal, mother contends the juvenile court's jurisdictional finding pertaining to her and its removal order are unsupported by substantial evidence. We disagree and affirm.

# BACKGROUND

T.J., then five years old, came to the attention of the Department in August 2020. Well before the referral, T.J. lived with mother at maternal great-uncle's home. Because mother knew she would have to serve time in prison, she arranged to have maternal great-uncle care for T.J. while she was incarcerated. Mother did not leave any documentation

---

1 Father is not a party to this appeal.

2 All further undesignated statutory references are to the Welfare and Institutions Code.

3 The petition alleged additional counts as to father. Because he is not a party to this appeal, we limit the discussion of the counts against him.

formalizing or otherwise memorializing her arrangement. Sometime after mother went to prison, maternal great-uncle passed T.J. to maternal cousin. Maternal cousin then passed T.J. to paternal grandmother and father.

At the time of the referral, T.J. lived with father, paternal grandmother, three paternal uncles, and one paternal aunt in paternal grandmother's home. The referral alleged T.J. had been subject to general neglect by father. The reporting party stated that because father was not taking his medication for Schizoaffective Disorder, he was talking to himself and not grooming himself. Paternal uncle had called the Psychiatric Emergency Team (PET) because father was having a psychotic break and met the criteria for a section 5150 hold. Because of COVID, PET was unable to enter father's home to assess him. Additionally, paternal grandmother refused to allow father to be taken to the hospital. Approximately one week later, T.J. was detained from father and placed in foster care.

Following an investigation, the Department filed a petition on behalf of T.J. under section 300, subdivision (b)(1) on September 2, 2020. The petition's sole count pertaining to mother alleged T.J. was at substantial risk of serious physical harm because mother made an inappropriate plan for T.J. (count b-2). Specifically, the petition alleged mother left T.J. with maternal great-uncle while she was incarcerated. Mother left no formal document or notarized letter to reflect their agreement regarding T.J.'s care. Maternal great-uncle eventually passed T.J. to other maternal and paternal relatives, who were unable and unwilling to care for T.J. As discussed below, T.J. suffered physical abuse while living with these relatives.

The adjudication hearing was held on October 28, 2020. After hearing evidence and argument, the juvenile court sustained the subdivision (b) count against mother as pled, finding the lack of documentation of the agreement between mother and maternal great-uncle and the subsequent handing of T.J. "from person to person" placed T.J. at substantial risk of serious physical and emotional harm.

## DISCUSSION

### I. Justiciability

Preliminarily, we address the Department's contention that mother's challenge to the juvenile court's jurisdictional finding pertaining to her is not justiciable. Specifically, the Department argues that because mother does not dispute the jurisdictional findings relating to father, "dependency jurisdiction over [the child] will remain regardless of the outcome of [her] appeal," and therefore we "need not address her claim of jurisdictional error." As discussed below, we disagree.

Ordinarily, "[w]hen a dependency petition alleges multiple grounds for its assertion that a minor comes within the dependency court's jurisdiction, a reviewing court can affirm the juvenile court's finding of jurisdiction over the minor if any one of the statutory bases for jurisdiction enumerated in the petition is supported by substantial evidence. In such a case, the reviewing court need not consider whether any or all of the other alleged statutory grounds for jurisdiction are supported by the evidence. [Citations.]" (*In re Alexis E.* (2009) 171 Cal.App.4th 438, 451.) Nevertheless, "we generally will exercise our discretion and reach the merits of a challenge to any jurisdictional finding when the finding . . . could be prejudicial to the appellant or could potentially impact the current or future dependency proceedings

4

[citations][.]" (*In re Drake M.* (2012) 211 Cal.App.4th 754, 762-763 (*Drake M.*).)

Consequently, where, as here, the outcome of the appeal will determine whether the parent is "'offending'" versus "'non-offending,'" a finding with potentially far-reaching consequences in these and future dependency proceedings, we find it appropriate to exercise our discretion and consider the jurisdictional challenge on the merits. (*Drake M., supra,* 211 Cal.App.4th at p. 763; see also *In re Quentin H.* (2014) 230 Cal.App.4th 608, 613.) Accordingly, we address the merits of mother's jurisdictional challenge below.

## II. Jurisdiction Under Section 300, Subdivision (b)

Pursuant to section 300, subdivision (b)(1), the juvenile court may exercise jurisdiction over a child if it finds "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child[.]"

Section 300, subdivision (b)(1) "effectively requires a showing that at the time of the jurisdictional hearing the child is at substantial risk of serious physical harm in the future (e.g., evidence showing a substantial risk that past physical harm will reoccur). [Citations.]" (*In re Savannah M.* (2005) 131 Cal.App.4th 1387, 1396.) "The Department has the burden of showing specifically how the minor[ ] ha[s] been or will be harmed[.]" (*In re Matthew S.* (1996) 41 Cal.App.4th 1311, 1318.) "Evidence of past conduct may be probative of current conditions, and may assist [the Department] in meeting this burden. [Citation.]

However, [the Department] must establish a nexus between the parent's past conduct and the current risk of harm. [Citation.]" (*In re J.N.* (2021) 62 Cal.App.5th 767, 775.) Additionally, "'[t]he court need not wait until a child is seriously abused or injured to assume jurisdiction and take the steps necessary to protect the child.' [Citation.]" (*In re I.J.* (2013) 56 Cal.4th 766, 773.)

We review a juvenile court's jurisdictional orders for substantial evidence. (*In re Yolanda L.* (2017) 7 Cal.App.5th 987, 992 (*Yolanda L.*).) Under this standard, "we view the record in the light most favorable to the juvenile court's determinations, drawing all reasonable inferences from the evidence to support the juvenile court's findings and orders." (*Ibid.*) "We do not reweigh the evidence, evaluate the credibility of witnesses, or resolve evidentiary conflicts. [Citation.]" (*In re Dakota H.* (2005) 132 Cal.App.4th 212, 228 (*Dakota H.*).)

"Substantial evidence must be of ponderable legal significance. It is not synonymous with 'any' evidence. [Citation.] The evidence must be reasonable in nature, credible, and of solid value. [Citation.]" (*Dakota H., supra*, 132 Cal.App.4th at p. 228.) "The appellant has the burden of showing there is no evidence of a sufficiently substantial nature to support the finding or order. [Citations.]" (*Ibid.*) "' . . . "The ultimate test is whether it is reasonable for a trier of fact to make the ruling in question in light of the whole record." [Citation.]' [Citation.]" (*Yolanda L., supra*, 7 Cal.App.5th at p. 992.)

Mother contends the juvenile court erred in sustaining the allegations in count b-2 because the evidence did not demonstrate T.J. suffered "serious physical harm as required under section 300, subdivision (b)(1)." Specifically, she argues that "even if it was . . . mother's fault [T.J.] lived with two separate relatives and

6

then father," who physically abused her by hitting T.J. with a belt, she did not sustain "serious harm" because he did not "cause[ ] any marks." Moreover, while mother acknowledges T.J. reported "she was whooped a lot" when residing with maternal cousin and maternal grandmother following her placement with maternal great-uncle, she argues those facts show only "perceptions of risk, rather than actual evidence of risk, and do not suffice as sufficient, substantial evidence." Finally, mother argues her plan to have T.J. temporarily reside with maternal great-uncle did not cause T.J. to be at substantial risk of serious physical harm.

In support of her argument, mother relies on *In re J.K.* (2009) 174 Cal.App.4th 1426 (*J.K.*). *J.K.,* however, does not support mother's contention. In *J.K.*, the juvenile court explained, "a showing of prior abuse and harm is sufficient, standing alone, to establish dependency jurisdiction[.]" (*J.K., supra*, 174 Cal.App.4th at p. 1435, fn. omitted.) There, the court examined the evidence in the record and found "given the totality of the circumstances[,]" including the severity of abuse and the time between the abuse and filing the petition, that the child was at substantial risk of physical and emotional harm. (*Id.* at p. 1440.)

Here, as in *J.K.*, the record contains sufficient evidence to support the juvenile court's finding that mother's conduct ultimately placed T.J. at substantial risk of suffering serious physical harm. The record shows that after T.J. was placed with maternal great-uncle per mother's plan, maternal great-uncle passed T.J. to maternal cousin, who T.J. claimed "whoop[ed]" her "a lot." When maternal cousin no longer wanted to take care of T.J., maternal cousin contacted paternal grandmother and asked her to take T.J. As mentioned above, father, paternal uncles and

a paternal aunt also resided in paternal grandmother's home. While living with father, T.J. stated paternal uncle screamed at her and "hit[ ] her a lot." She also stated that father had hit her with a belt and it hurt because he hit her with the buckle. There was also evidence T.J. lived with maternal grandmother for some time while mother was incarcerated. While with maternal grandmother, T.J. stated she was hit and did not want to go back there because she was "whooped."

Ultimately, mother's original plan to place T.J. in the care of maternal great-uncle led to T.J. being abused by multiple people before the Department removed her from mother's custody. Mother's inappropriate plan essentially set in motion the series of events and subsequent placements that resulted in T.J. being physically abused by several relatives and therefore placed her at substantial risk of serious harm. In sum, the evidence of abuse is not "merely speculative." (*In re J.N., supra*, at p. 776.) We therefore disagree with mother's argument that the evidence did not prove T.J. was exposed to substantial risk of serious harm.

In addition to placing T.J. with a relative who was ultimately unwilling and unable to care for her, mother did not ensure that relative was adequately prepared to provide such care. Specifically, mother failed to provide documents or a notarized letter confirming T.J.'s childcare arrangement with maternal great-uncle. These documents would be necessary to ensure T.J. received proper medical care had she fallen sick or if there was an emergency while in maternal great-uncle's care. Consequently, mother's failure to provide maternal great-uncle with these documents lends further support for the juvenile court's jurisdictional findings pertaining to her.

Moreover, because mother did not formalize the agreement with maternal great-uncle, T.J. was at risk of being placed, and ultimately was placed, in father's care. The record clearly indicates mother was aware of father's mental health issues. For example, she claimed she did not want father around T.J. because he is "not in his right state of mind," and is "sick in the head." Mother further claimed father "goes crazy" and "gets aggressive." She also admitted she had never left T.J. in father's care alone. Accordingly, mother knew father was not a proper placement, yet she did not take sufficient steps to prevent T.J. from ending up in his care.

Given the totality of the circumstances, the record shows mother failed to make proper arrangements for T.J.'s care, and thereby placed her at substantial risk of serious physical harm. We therefore conclude the juvenile court correctly sustained the allegations in count b-2 pertaining to mother.

## III.   Removal Under Section 361, Subdivision (c).

Pursuant to section 361, subdivision (c)(1), the juvenile court may remove a child from the custody of a parent if it finds, by clear and convincing evidence, "[t]here is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's . . . physical custody." "A juvenile court's removal order at a disposition hearing will be affirmed on appeal if it is supported by substantial evidence. [Citation.]" (*V.L.*, *supra*, 54 Cal.App.5th at p. 154.)

9

Our Supreme Court recently clarified the nature of substantial evidence review applicable to a challenge to the sufficiency of the evidence supporting a finding made under the clear and convincing evidence standard. It held: "[A]n appellate court must account for the clear and convincing standard of proof when addressing a claim that the evidence does not support a finding made under this standard. When reviewing a finding that a fact has been proved by clear and convincing evidence, the question before the appellate court is whether the record as a whole contains substantial evidence from which a reasonable factfinder could have found it highly probable that the fact was true. In conducting its review, the court must view the record in the light most favorable to the prevailing party below and give appropriate deference to how the trier of fact may have evaluated the credibility of witnesses, resolved conflicts in the evidence, and drawn reasonable inferences from the evidence." (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1011-1012 (*O.B.*).)

Mother contends the juvenile court erred by removing T.J. from her. In support, she argues "there were reasonable means to protect [T.J.] without removal since mother was able to make an appropriate plan for T.J. while mother was incarcerated." Mother further argues she is able to arrange for an appropriate plan for T.J. Her plan is to have T.J. reside with maternal great-uncle until she is out of prison. Finally, mother argues "there was no evidence [T.J.] was in substantial danger in the care of maternal great-uncle."

Mother relies on *In re S.D.* (2002) 99 Cal.App.4th 1068 (*S.D.*), arguing "the Department did not prove mother was unable to arrange for [T.J]'s care." *S.D.* is inapplicable. There, the trial

10

court sustained the petition under section 300, subdivision (g)[4] and dismissed the subdivision (b) count. (*Id.* at pp. 1074.) The "only remaining basis for jurisdiction" was the subdivision (g) count. (*Ibid.*) The appellate court determined that at the jurisdiction hearing, mother's counsel improperly conceded that subdivision (g), was applicable. (*Id.* at p. 1077.) Because mother's counsel "misunderstood the statute" and thus provided ineffective assistance of counsel, the appellate court remanded the matter to the trial court to determine whether a petition based on subdivision (g) could be pled and proven. (*Id.* at p. 1080, 1083-1084.)

Here, as discussed above, the juvenile court did not sustain a subdivision (g) count; instead, with respect to mother, it sustained only a subdivision (b) count. Moreover, on appeal, mother does not contend she received ineffective assistance of counsel. We therefore decline to apply *S.D.* as it concerned different issues arising under a different subdivision of section 300.

Mother also relies on *Maggie S. v. Superior Court* (2013) 220 Cal.App.4th 662 (*Maggie S.*). *Maggie S.* is distinguishable. There, the juvenile court sustained jurisdictional counts under both section 300 subdivision (b) and (g). (*Maggie S.*, *supra*, at p. 664.) The appellate court determined jurisdiction under

---

4      Under section 300, subdivision (g), a child may be declared a dependent child of the court if "the child's parent has been incarcerated or institutionalized and cannot arrange for the care of the child; or a relative or other adult custodian with whom the child resides or has been left is unwilling or unable to provide care or support for the child, the whereabouts of the parent are unknown, and reasonable efforts to locate the parent have been unsuccessful."

subdivision (b) was improper because the Department did not allege the child was at substantial risk of serious harm, nor was there substantial evidence of such a risk. (*Id.* at p. 673.) Specifically, the appellate court noted that although the person mother designated as the child's caretaker in writing did not release her medical records to renew her foster care license, the record did not reflect the caretaker's failure to release those documents posed a risk of harm to the child. (*Ibid.*) Additionally, the appellate court found jurisdiction was improper under subdivision (g) as mother had arranged for, and designated in writing, a plan for her child's care while she was incarcerated. (*Id.* at p. 672) As the appellate court explained, mother was not required under subdivision (g) to prove suitability of the placement and she was available to make other arrangements if her original plan was unsuitable. (*Id.* at p. 673) The subdivision (g) count was therefore improper. (*Ibid.*) Ultimately, the appellate court reversed the sustained jurisdictional allegations. (*Id.* at pp. 672-674.)

In contrast to *Maggie S.*, here, mother left no written designation identifying maternal great-uncle as T.J.'s caregiver. Furthermore, unlike the caretaker in *Maggie S.*, maternal great-uncle did not state to the Department that he was able or willing to take care of T.J. (*Maggie S.*, *supra*, at p. 673.) Ultimately, mother's plan led to T.J. being passed from one home to another, caused instability to her life, and caused her to suffer physical abuse. We note mother's plan as stated in her appeal is for T.J. to reside with the same maternal great-uncle who initially passed T.J. on to other family members. In sum, there is sufficient evidence to show mother's plan for T.J. placed her at serious risk of physical harm.

Consequently, we conclude the record "contains substantial evidence from which a reasonable fact finder could have found it highly probable" (*O.B.*, *supra*, 9 Cal.5th at p. 1011) that "[t]here . . . would be a substantial danger to [T.J.'s] physical health . . . if [she] were returned" to mother. (§ 361, subd. (c)(1).)

## DISPOSITION

The jurisdictional and dispositional orders are affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


CURREY, J.


We concur:


MANELLA, P.J.


COLLINS, J.

13