Filed 6/20/23  In re L.C. CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re L.C. et al., Persons Coming Under the Juvenile Court Law. | B321708 (Los Angeles County Super. Ct. No. 21CCJP05577A-C) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>M.G.,<br><br>    Defendant and Appellant. | |

APPEAL from findings and orders of the Superior Court of Los Angeles County, Terry T. Truong, Judge Pro Tempore. Affirmed.

Elizabeth C. Alexander, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Veronica Randazzo, Deputy County Counsel, for Plaintiff and Respondent.

_____

Defendant and appellant M.G. (mother) appeals from the juvenile court's January 19, 2022, jurisdictional findings and dispositional orders in which her children, L.C. (born Apr. 2010), Alejandro C., Jr. (Alejandro Jr., born Feb. 2015), and Genevieve B. (born Dec. 2021),[1] were declared dependents of the court and removed from her custody. Because the findings and orders are supported by substantial evidence, we affirm.

## BACKGROUND

I. *Referral and Initial Investigation*

Mother tested positive for amphetamines and cannabinoids upon giving birth to Genevieve in early December 2021. After receiving a referral alleging general neglect, a social worker with the Los Angeles County Department of Children and Family Services (DCFS) responded to the hospital.

The social worker interviewed mother, who stated that her older children, L.C. and Alejandro Jr., had been living with their

_____

[1] We refer to L.C., Alejandro Jr., and Genevieve collectively as minors.

2

father, Alejandro C., Sr. (Alejandro Sr.), and his mother for about a year. Genevieve's father was Miguel B. (Miguel).[2]

Mother disclosed domestic violence in her relationships with both Alejandro Sr. and Miguel. Mother had separated from Alejandro Sr. four years earlier and no longer communicated with him. Mother reported a violent incident with Miguel that had occurred while she was pregnant. Mother said that she initially pushed Miguel during a verbal dispute and that he responded by pushing her and causing her to fall off the bed. Miguel was arrested, and their relationship ended.

Mother stated that she had a 13-year history of marijuana use and had also been using methamphetamine for two to three years. Prior to her pregnancy, she had used marijuana about two to three times per week and methamphetamine two to three times per month. Mother admitted to using drugs twice during her pregnancy. In September 2021, she smoked crystal methamphetamine and shortly thereafter tested positive for amphetamines at a prenatal care appointment. In late November 2021, she smoked marijuana that she later learned was laced with methamphetamine. Mother also reported that she had been convicted of driving under the influence of alcohol and was on probation. She agreed to submit to an on demand drug test following her discharge from the hospital.

Mother consented to the detention of minors.

The social worker also interviewed Miguel, who reported that he and mother had engaged in one incident of domestic violence in August 2021. Mother had accused him of infidelity and had yelled at, pushed, and slapped him. When he grabbed mother's arms to calm her, she lost her balance and fell to the

---

[2]    Neither Alejandro Sr. nor Miguel is a party to this appeal.

3

ground.  Miguel was arrested and, while he was in custody, mother moved out of the home.  Since that incident, he had no physical contact with mother.  Miguel had previously been arrested following a verbal dispute with mother, but those charges were later dropped.  Miguel disclosed a history of using crystal methamphetamine, mushrooms, pills, and marijuana.  He denied recent drug use except for marijuana.

Alejandro Sr. told the social worker that he and mother separated four or five years earlier and had not communicated since.  He denied domestic violence during their relationship.  Alejandro Sr., L.C., and Alejandro Jr. lived with paternal relatives.  Alejandro Sr. denied all substance abuse but admitted to using marijuana on a daily basis for insomnia and knee pain.

Both L.C. and Alejandro Jr. stated that Alejandro Sr. and their grandparents took good care of them.  They preferred to continue living with Alejandro Sr. and their grandparents and visiting mother.

According to mother's probation officer, mother had been ordered to participate in a first offenders program, an anti-drunk driving program, and 52 weeks of alcoholics anonymous.  Mother had not provided documentation that she had participated in any of her court-ordered programs.  She had also been ordered to drug test, but that requirement had not been implemented because of the COVID-19 pandemic.

II.  *Dependency Petition*

On December 7, 2021, DCFS filed a dependency petition seeking the juvenile court's exercise of jurisdiction over minors pursuant to Welfare and Institutions Code section 300,

4

subdivisions (a) (nonaccidental serious physical harm) and (b)(1) (failure to protect).[3]

III. *Last Minute Information for the Court (Dec. 10, 2021)*

DCFS reported that Genevieve's meconium had tested positive for amphetamines, opiates, and cannabinoids. Mother and Miguel tested positive for marijuana on December 6, 2021.

IV. *Detention Hearing*

At the December 10, 2021, detention hearing, the juvenile court detained minors from mother and released them to their respective fathers under DCFS supervision. Mother was granted monitored visitation.

V. *First Amended Dependency Petition*

On January 11, 2022, DCFS filed a first amended section 300 petition on behalf of minors. Counts a-1 and b-2 alleged that mother and Miguel had a history of engaging in violent physical altercations. Count b-1 alleged that mother's history of substance abuse and current abuse of marijuana, amphetamines, and methamphetamine, rendered her incapable of providing regular care and supervision of minors. Count b-3 alleged that Alejandro Sr.'s history of and current substance abuse rendered him incapable of providing regular care and supervision of L.C. and Alejandro Jr.[4]

---

[3] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

[4] Alejandro Sr.'s December 7, 2021, drug test returned positive for marijuana, amphetamines, and methamphetamine.

5

VI. *Jurisdiction/Disposition Report*

    A. <u>Interviews</u>

A dependency investigator conducted various interviews regarding the allegations in the section 300 petition.

        1. *Mother*

Mother admitted to using crystal methamphetamine while pregnant when her grandmother died. Mother had also smoked a marijuana "joint" shortly before Genevieve was born, but she claimed to be unaware that it contained methamphetamine. Mother also had a history of alcohol use. She had started drinking when she became homeless in 2017. In 2019, she was involved in a car accident that resulted in injuries to others. She had not participated in her court-ordered programs because they cost money and she was ill during her pregnancy.

Mother described the incident of domestic violence with Miguel and directed the dependency investigator to the police report. Mother claimed that it "was an isolated incident." She said that Miguel had never hit or "laid hands on" her. She stated, "it was just frustration . . . me trying to hug him and him trying to keep me away from him."

        2. *Miguel*

Miguel discussed two incidents of domestic violence with mother. During the first incident in 2020, Miguel was arrested. He claimed that he did not hit mother but that she threatened him with a knife.

During the second incident in August 2021, Miguel stated that mother "started yelling and making a scene" because she thought he "was cheating on her." He claimed that mother pushed him off the bed and grabbed and scratched him. Miguel grabbed mother by the arms to prevent her from throwing things

6

at him.  Miguel denied pushing mother or that she fell.  He stated that he was "arrested . . . without having any proof."

Miguel and mother were not currently in a romantic relationship, but he was "open to reconciling for . . . [Genevieve]'s sake."

### 3. *L.C. and Alejandro Jr.*

L.C. and Alejandro Jr. denied ever seeing mother drink alcohol, use drugs, or "behav[e] weird."  They also denied observing Miguel or mother hit each other.

### B. Police report

DCFS obtained the El Monte Police Department report from the August 31, 2021, domestic violence incident involving mother and Miguel.

When officers responded, mother said that she and Miguel had been involved in a verbal argument when Miguel pushed her off the bed by kicking her twice in the ribs.  Mother defended herself by scratching Miguel.  Miguel dragged mother across the floor by her hair, punched her cheek and lip, and strangled her with both of his hands for approximately seven seconds.  Mother did not lose consciousness but felt as if "her eyes were going to pop out of her head."  Mother was six and half months pregnant with Miguel's child at the time.  Mother disclosed that Miguel had strangled her during a previous domestic violence incident, which she did not report.  Mother did not want Miguel to be prosecuted.

Miguel reported that mother was upset because she was not getting his attention.  Mother scratched his leg, and he defended himself by pushing her.

An officer observed mother to have bruises on her left forearm, minor swelling on her face, and redness on her lip and neck. Miguel had several scratches.

The next day, mother spoke with a detective. She told him that Miguel grabbed her hair, and she defended herself by scratching Miguel's neck. Miguel later pulled mother's hair again; to defend herself, mother threw a stuffed animal and a napkin at Miguel and also tried to kick him. Miguel "placed his foot on her right rib cage area and began to kick her off the bed." Mother then clarified that Miguel "did not kick her, but he placed his foot on her right rib cage in order to kick her out of the bed." Mother fell to the floor. When mother stood up and sat back on the bed, Miguel again put his foot on her right rib cage area and pulled her hair. Miguel threw mother off of the bed, and she fell to the floor and landed on the left side of her pregnant stomach.

Mother stated that Miguel strangled her after she fell on the floor the first time and told her, "'I can kill you if I wanted to[.]'" She recalled being punched twice in the face by Miguel during the altercation. The detective observed various scratches and bruises on mother.

The detective also noted that Miguel and mother had been "listed as suspect/victims" in a spousal abuse case in July 2020. Mother also confirmed a prior unreported domestic violence incident in February 2020. Miguel had strangled her, causing her to lose consciousness.

VII. *Last Minute Information for the Court (Jan. 11, 2022)*

As of January 8, 2022, mother had enrolled in a domestic violence program, parenting education classes, and a substance abuse program and had completed one session of each.

VIII. *Last Minute Information for the Court (Jan. 18, 2022)*

DCFS reported that, in January 2022, both mother and Alejandro Sr. tested positive for marijuana. Miguel had missed two drug tests.

IX. *Adjudication Hearing*

After entertaining oral argument on January 19, 2022, the juvenile court sustained, as amended by interlineation, count b-1 regarding mother's substance abuse,[5] count b-2 regarding domestic violence between mother and Miguel,[6] and count b-3

---

[5] As sustained, count b-1 states: "[M]other . . . has a history of substance abuse and is a current abuser of marijuana, amphetamines, and methamphetamine[], which renders the mother incapable of providing regular care and supervision of the child[ren]. . . . [A]t the birth of . . . Genevieve, the mother had a positive toxicology screen for cannabinoids and amphetamines. On [December 4, 2021], . . . Genevieve's meconium screen indicated positive results for amphetamines, cannabinoids, and opiates. . . . Alejandro[ Jr.] and Genevieve[] are of such young age requiring constant care and supervision and the mother's substance abuse interferes with providing regular care and supervision of the children. The mother's substance abuse endangers the children's physical health and safety and places the child[ren] at risk of serious physical harm, damage, and danger." (Bolding omitted.)

[6] As sustained, count b-2 states: "[M]other . . . and . . . mother's male companion, Miguel . . . , have a history of engaging in violent physical altercations. [I]n August 2021, while the mother was pregnant with . . . Genevie[v]e, . . . [Miguel] grabbed the mother's arms and forcibly pushed the mother causing the mother to fall. . . . [Miguel] punched the mother twice, pulled the mother's hair, and strangled the mother. The mother forcibly pushed . . . [Miguel] and slapped . . . [Miguel]'s face. The violent

9

regarding Alejandro Sr.'s substance abuse, all brought under section 300, subdivision (b)(1). The court dismissed count a-1.

As to count b-1, the juvenile court stated: "[T]here is ample evidence that [mother] is using drugs, that she continues to use drugs, and she has not tested for the Department. It would have helped her situation if I could get a sense of what she is testing at, but given that she has not, I do believe that she's a current user and has not made the decision to stop after her child's birth."[7] As to count b-2, the court found "sufficient evidence" of "physical altercations" between mother and Miguel.

The juvenile court declared minors dependents of the court and removed them from mother's custody. The court ordered L.C. and Alejandro Jr. released to Alejandro Sr. and Genevieve released to Miguel on the condition that the respective fathers resided with respective paternal relatives. The court ordered DCFS to provide enhancement services to mother and granted mother monitored visitation with DCFS having the discretion to liberalize.

X. *Appeal*

Mother filed a timely notice of appeal from the jurisdictional findings and dispositional orders.

---

conduct by . . . [Miguel] and the mother[] endangers the children's physical health and safety, creates a detrimental home environment, and places the children at risk of serious physical harm, damage, and danger." (Bolding omitted.)

[7] The juvenile court later acknowledged that mother had submitted to drug testing on January 4, 2022.

XI. *Subsequent Events*[8]

In October 2022, the juvenile court terminated its jurisdiction over L.C. and Alejandro Jr. and issued a juvenile custody order granting Alejandro Sr. sole legal and physical custody of those children. Mother was entitled to monitored visitation with L.C. and Alejandro Jr.

## DISCUSSION

On appeal, mother contends that insufficient evidence supports the juvenile court's jurisdictional findings and dispositional orders removing minors from her custody.[9]

---

[8] On January 30, 2023, DCFS filed a motion requesting that we take judicial notice of the juvenile court's October 19, 2022, and October 21, 2022, minute orders regarding L.C. and Alejandro Jr., as well as the juvenile custody order dated October 21, 2022. We hereby grant the motion. (Evid. Code, §§ 452, subd. (d), 459, subd. (a); *In re M.F.* (2022) 74 Cal.App.5th 86, 110 ["While appellate courts rarely consider postjudgment evidence or evidence developed after the ruling challenged on appeal, such evidence is admissible for the limited purpose of determining whether the subsequent development has rendered an appeal partially or entirely moot"].)

[9] Although mother does not challenge the jurisdictional findings made against Alejandro Sr. and Miguel, and the juvenile court's jurisdiction has been terminated as to L.C. and Alejandro Jr., we find that mother's appeal is not moot. (See *In re D.P.* (2023) 14 Cal.5th 266, 277–278 ["a case is not moot where a jurisdictional finding affects parental custody rights [citation], curtails a parent's contact with his or her child [citation], or 'has resulted in [dispositional] orders which continue to adversely affect' a parent [citation]"]; *In re J.K.* (2009) 174 Cal.App.4th 1426, 1431–1432.)

11

I. *Jurisdictional Findings*

A. <u>Applicable law</u>

Under section 300, subdivision (b)(1), the juvenile court has jurisdiction over and may adjudge to be a dependent of the court a "child [who] has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of"—as relevant here—"[t]he failure or inability of the child's parent . . . to adequately supervise or protect the child" (§ 300, subd. (b)(1)(A)) or "[t]he inability of the parent . . . to provide regular care for the child due to the parent's . . . substance abuse" (§ 300, subd. (b)(1)(D)).

"While evidence of past conduct may be probative of current conditions, the question under section 300 is whether circumstances *at the time of the hearing* subject the child to the defined risk of harm." (*In re Emily L.* (2021) 73 Cal.App.5th 1, 15.) Still, "section 300 does not require that a child actually be abused or neglected before the juvenile court can assume jurisdiction. The subdivision[] at issue here require[s] only a 'substantial risk' that the child will be abused or neglected. The legislatively declared purpose of these provisions 'is to provide maximum safety and protection for children who are currently being physically, sexually, or emotionally abused, being neglected, or being exploited, and to ensure the safety, protection, and physical and emotional well-being of children *who are at risk of that harm*.' [Citation.]" (*In re I.J.* (2013) 56 Cal.4th 766, 773.)

B. <u>Standard of review</u>

Jurisdictional findings must be made by a preponderance of the evidence. (§ 355, subd. (a); *Cynthia D. v. Superior Court* (1993) 5 Cal.4th 242, 248.) We review those findings for substantial evidence—"evidence that is reasonable, credible and

12

of solid value.  [Citations.]  We do not evaluate the credibility of witnesses, attempt to resolve conflicts in the evidence or determine the weight of the evidence.  Instead, we draw all reasonable inferences in support of the findings, view the record favorably to the juvenile court's order and affirm the order even if there is other evidence supporting a contrary finding."  (*In re R.V.* (2012) 208 Cal.App.4th 837, 843.)

"Substantial evidence may include inferences, so long as any such inferences are based on logic and reason and rest on the evidence."  (*In re Madison S.* (2017) 15 Cal.App.5th 308, 318.)

C.  Analysis

Ample evidence supports the jurisdictional findings pertaining to mother.

### 1. *Mother's substance abuse (count b-1)*

Mother admitted to a 13-year history of marijuana use and a two-to-three-year history of methamphetamine use.  This drug use continued during mother's pregnancy with Genevieve:  In September 2021, she smoked crystal methamphetamine and in late November 2021, shortly before Genevieve's birth, she smoked marijuana laced with methamphetamine.  Mother tested positive for amphetamines and cannabinoids upon Genevieve's birth, and Genevieve's meconium tested positive for amphetamines, opiates, and cannabinoids.  After Genevieve's birth, mother tested positive for marijuana in December 2021 and January 2022.  In 2019, mother had been involved in a car accident that resulted in injuries to others and led to her conviction for driving under the influence of alcohol.  She was on probation but had not completed her court-ordered programs.

The foregoing constitutes substantial evidence that mother's substance abuse had subjected Genevieve to actual

13

physical harm and continued to place all minors at risk of future harm. The juvenile court could reasonably infer this risk from mother's longstanding drug abuse, which had continued even during her pregnancy with Genevieve. (See *In re T.V.* (2013) 217 Cal.App.4th 126, 133 ["A parent's past conduct is a good predictor of future behavior"]; *In re Troy D.* (1989) 215 Cal.App.3d 889, 899 ["prenatal use of dangerous drugs by a mother is probative of future child neglect"].) Further, Alejandro Jr. and Genevieve were "children of 'tender years'" and, thus, "'the finding of substance abuse [wa]s prima facie evidence of the inability of . . . [mother] to provide regular care resulting in a substantial risk of harm.' [Citations.]" (*In re Christopher R.* (2014) 225 Cal.App.4th 1210, 1219.)

Mother contends that she had mitigated any harm or risk of harm to minors by the time of the adjudication hearing, pointing to her cooperation with DCFS and enrollment in programs. We are not persuaded. While laudable, these factors were insufficient to ameliorate the risk of harm posed to minors from mother's substance abuse. Mother also asserts that she "was clean from all substances, except marijuana, which was at declining level[s], establishing she was not using." Mother extrapolates too much from two drug tests. Given that mother had tested positive for amphetamines and cannabinoids upon Genevieve's birth less than two months before the adjudication hearing and continued to test positive for marijuana in January 2022, the juvenile court was not compelled to find that mother's drug abuse had ceased. (See *In re R.V.*, *supra*, 208 Cal.App.4th at p. 843 [under the substantial evidence standard of review, appellate court does not "attempt to resolve conflicts in the evidence"].)

14

2. *Domestic violence (count b-2)*

Regarding domestic violence between mother and Miguel, the police report from the August 31, 2021, incident provided compelling evidence of a volatile and dangerous relationship. Mother reported to the police that Miguel had strangled her while she was six and a half months pregnant. She also disclosed that, several months earlier, he had strangled her to the point that she lost consciousness.

The juvenile court could readily conclude that the violence between mother and Miguel placed minors at substantial risk of serious physical harm. (See *In re S.O.* (2002) 103 Cal.App.4th 453, 460–461 ["'domestic violence in the same household where children are living *is* neglect; it is a failure to protect [them] from the substantial risk of encountering the violence and suffering serious physical harm or illness from it[]'"]; *In re Benjamin D.* (1991) 227 Cal.App.3d 1464, 1470, fn. 5 ["Both common sense and expert opinion indicate spousal abuse is detrimental to children"].) That mother and Miguel may not have shared a romantic relationship at the time of the adjudication hearing does not mean that a defined risk of harm to minors had ceased to exist. Miguel told DCFS that he was open to reconciling with mother. It is logical to infer that upon resumption of the relationship, violence would again ensue. (See *In re L.O.* (2021) 67 Cal.App.5th 227, 238 ["'"[P]ast violent behavior in a relationship is "the best predictor of future violence[]"'"].) And, given mother's history of domestic violence with both Miguel and Alejandro Sr., the court could infer a risk of violence between mother and another future partner.

Furthermore, mother had minimized the severity of the August 2021 domestic violence incident with Miguel, telling the

15

dependency investigator that it "was an isolated incident" and that Miguel had never hit or "laid hands on" her. This denial, which conflicts with mother's past statements and the police report, is itself evidence of a risk of recurrent domestic violence. (See *In re V.L.* (2020) 54 Cal.App.5th 147, 156 ["A parent's denial of domestic violence increases the risk of it recurring"]; *In re Gabriel K.* (2012) 203 Cal.App.4th 188, 197 ["One cannot correct a problem one fails to acknowledge"].)

II. *Dispositional Orders Removing Minors from Mother*

    A. <u>Applicable law</u>

    Before removing a minor from a parent's custody, the juvenile court is required to make one of five specified findings by clear and convincing evidence. (§ 361, subd. (c).) One ground for removal is that there is a substantial risk of injury to the child's physical health, safety, protection, or emotional well-being if he or she were returned home, and there are no reasonable means to protect the child. (§ 361, subd. (c)(1).) ""Clear and convincing" evidence requires a finding of high probability. The evidence must be so clear as to leave no substantial doubt. It must be sufficiently strong to command the unhesitating assent of every reasonable mind. [Citations.]' [Citation.] Actual harm to a child is not necessary before a child can be removed. 'Reasonable apprehension stands as an accepted basis for the exercise of state power.'" (*In re V.L.*, *supra*, 54 Cal.App.5th at p. 154.)

    B. <u>Standard of review</u>

    We review a dispositional order removing a minor from parental custody for substantial evidence. (*In re V.L.*, *supra*, 54 Cal.App.5th at p. 154.) Because the juvenile court must make its finding that a ground for removal exists under the clear and convincing evidence standard of proof (§ 361, subd. (c)), "the

16

question before the appellate court is whether the record as a whole contains substantial evidence from which a reasonable fact finder could have found it highly probable that the fact was true" (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1011).

    C. <u>Analysis</u>

The same evidence that supports the juvenile court's exercise of dependency jurisdiction also constitutes substantial evidence from which the juvenile court could find it highly probable that minors would be at risk of substantial danger if returned to mother's custody.  (§ 361, subd. (c)(1).)

Resisting this conclusion, mother directs us to her enrollment and participation in programs, drug test results, cooperation with DCFS, and positive visitation with minors.  In so doing, mother essentially asks us to reweigh the evidence, which the substantial evidence standard of review does not permit.  (*Conservatorship of O.B.*, *supra*, 9 Cal.5th at p. 1008.) Mother also questions why the juvenile court permitted minors to remain in the custody of their respective fathers.  That issue is not before us in this appeal.

## DISPOSITION

The jurisdictional findings and dispositional orders are affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


_____, Acting P. J.
ASHMANN-GERST


We concur:


_____, J.
CHAVEZ


_____, J.
HOFFSTADT