Filed 11/6/23  In re Sean F.H. CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re SEAN F. II., a Person Coming Under the Juvenile Court Law. | B325170 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. SEAN F., Defendant and Appellant. | (Los Angeles County Super. Ct. No. 20CCJP05311E) |

APPEAL from an order of the Superior Court of Los Angeles County, Robin R. Kesler, Juvenile Court Referee. Affirmed.

David M. Thompson, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Jane Kwon, Principal Deputy County Counsel, for Plaintiff and Respondent.

_____

## INTRODUCTION

A few months after sustaining a petition under Welfare and Institutions Code section 300 and declaring Sean F. II (Sean) a dependent child of the court, the juvenile court terminated its jurisdiction and issued a custody and visitation order granting Sean's mother, April Z., sole custody of Sean.[1] Sean's father, Sean F., appeals from the jurisdiction findings, arguing substantial evidence did not support them. We conclude that Sean F.'s appeal is not moot and that substantial evidence supported the court's findings Sean F.'s physical abuse of Sean's mother and two half-siblings placed Sean at substantial risk of serious physical harm. Therefore, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Sean's parents are April and Sean F. April has two other children, Lennon, born in 2011, and Zoe, born in 2010, whose father is not Sean F.[2]

_____

[1] Undesignated statutory references are to the Welfare and Institutions Code.

[2] Neither April, Lennon, nor Zoe is a party to this appeal.

2

In May 2022, when Sean was only a few months old, the Los Angeles County Department of Children and Family Services filed a petition under section 300 on behalf of the three children. The Department alleged Sean F. and April had "a history of engaging in violent physical altercations," including an incident where Sean F. threatened to kill April with a knife and an incident where Sean F. hit April in her eye with his fist, pushed her onto a bed, and "straddled" her. The Department also alleged Sean F. physically abused Lennon by grabbing his hair and pushing him into a wall and physically abused Zoe by striking her face. In addition, the Department alleged Sean F. was "a current abuser of marijuana" and "used and was under the influence of marijuana" in the presence of Lennon and Zoe. The Department asserted nine counts against Sean F. on behalf of Sean: three under section 300, subdivision (a) (one based on engaging in domestic violence with April, one based on abusing Zoe, and one based on abusing Lennon), alleging there was a substantial risk Sean would suffer serious physical harm inflicted nonaccidentally; four under section 300, subdivision (b) (one based on engaging in domestic violence with April, one based on abusing Zoe, one based on abusing Lennon, and one based on using cannabis), alleging there was a substantial risk Sean would suffer serious physical harm because Sean F. failed and was unable to supervise, protect, or provide regular care for Sean; and two under section 300, subdivision (j) (one based on abusing Lennon and one based on abusing Zoe), alleging there was a substantial risk Sean F. would also abuse Sean.

The juvenile court found the allegations true, sustained the petition and each count against Sean F., declared Sean a dependent child of the court, and removed Sean from Sean F. and

released Sean to April. Sean F. appealed from the jurisdiction findings and disposition order.

A few months after the disposition order, however, the court terminated its jurisdiction and issued an order under section 362.4 granting April sole legal and physical custody of Sean, with monitored visits for Sean F. at least once per week.[3] Sean F. appealed from the court's order terminating its jurisdiction and the custody and visitation order.

## DISCUSSION

A.      *Sean F.'s Appeal Is Not Moot*

"Juvenile dependency appeals raise unique mootness concerns because the parties have multiple opportunities to appeal orders even as the proceedings in the juvenile court proceed." (*In re N.S.* (2016) 245 Cal.App.4th 53, 59.) An appeal "becomes moot when events "'render[ ] it impossible for [a] court, if it should decide the case in favor of [the appellant], to grant him any effect[ive] relief.'" . . . [¶] . . . A reviewing court must "'decide on a case-by-case basis whether subsequent events in a juvenile dependency matter make a case moot and whether [its] decision would affect the outcome in a subsequent proceeding.'"" (*In re D.P.* (2023) 14 Cal.5th 266, 276; see *In re Damian L.* (2023) 90 Cal.App.5th 357, 369.)

---

[3]      "When terminating its jurisdiction over a child who has been declared a dependent child of the court, section 362.4 authorizes the juvenile court to issue a custody and visitation order (commonly referred to as an 'exit order') that will become part of the relevant family law file and remain in effect in the family law action 'until modified or terminated by a subsequent order.'" (*In re T.S.* (2020) 52 Cal.App.5th 503, 513.)

4

"An order terminating juvenile court jurisdiction generally renders an appeal from an earlier order moot." (*In re Rashad D.* (2021) 63 Cal.App.5th 156, 164; see *In re G.Z.* (2022) 85 Cal.App.5th 857, 874; *In re C.C.* (2009) 172 Cal.App.4th 1481, 1488.) However, "when a juvenile court's finding forms the basis for an order that continues to impact a parent's rights—for instance, by restricting visitation or custody—that jurisdictional finding remains subject to challenge, even if the juvenile court has terminated its jurisdiction. [Citation.] Because reversal of the jurisdictional finding calls into question the validity of orders based on the finding, review of the jurisdictional finding can grant the parent effective relief." (*In re D.P.*, *supra*, 14 Cal.5th at pp. 276-277; see *In re J.K.* (2009) 174 Cal.App.4th 1426, 1431-1432; *In re A.R.* (2009) 170 Cal.App.4th 733, 740.)

The juvenile court's jurisdiction findings were the bases of the custody and visitation order that gave April sole physical and legal custody of Sean and that required Sean F.'s visits with Sean to be monitored. And because Sean F. appealed from the juvenile court's order terminating its jurisdiction and the custody and visitation order, we can grant Sean F. effective relief if his appeal from the jurisdiction findings were successful. (See *In re Rashad D.*, *supra*, 63 Cal.App.5th at p. 164, fn. omitted ["to the extent an appellant argues . . . the challenged jurisdiction finding resulted in an adverse juvenile custody order and seeks to have that custody order set aside, in addition to the appeal from the jurisdiction finding, an appeal from the orders terminating jurisdiction and awarding custody is necessary"].)

B.   *Substantial Evidence Supported the Juvenile Court's Jurisdiction Findings Based on Sean F.'s Abuse of April, Lennon, and Zoe*

1.   *Applicable Law and Standard of Review*

"The purpose of section 300 'is to provide maximum safety and protection for children who are currently being physically, sexually, or emotionally abused, being neglected, or being exploited, and to ensure the safety, protection, and physical and emotional well-being of children who are at risk of that harm.'" (*In re Cole L.* (2021) 70 Cal.App.5th 591, 601; see § 300.2, subd. (a); *In re I.J.* (2013) 56 Cal.4th 766, 773.)  "Although section 300 requires proof the child is subject to the defined risk of harm at the time of the jurisdiction hearing [citations], the court need not wait until a child is seriously abused or injured to assume jurisdiction and take steps necessary to protect the child. [Citations.]  The court may consider past events in deciding whether a child presently needs the court's protection."  (*Cole L.,* at pp. 601-602; see *In re L.B.* (2023) 88 Cal.App.5th 402, 411.)

"Section 300, subdivision (a), provides that jurisdiction may be assumed if the child has suffered, or there is a substantial risk the child will suffer, serious physical harm inflicted nonaccidentally by the child's parent or guardian."  (*In re Cole L., supra,* 70 Cal.App.5th at p. 601; see § 300, subd. (a).)  "'Nonaccidental' generally means a parent or guardian 'acted intentionally or willfully.'"  (*Cole L.,* at p. 601; see *In re R.T.* (2017) 3 Cal.5th 622, 629.)

Section 300, subdivision (b), authorizes the juvenile court to assert jurisdiction where "the 'child has suffered, or there is a substantial risk that the child will suffer, serious physical harm

6

or illness, as a result of the failure or inability of the child's parent or guardian to adequately supervise or protect the child.'" (See *In re S.F.* (2023) 91 Cal.App.5th 696, 712.) "A jurisdiction finding under section 300, subdivision (b)(1), requires the Department to prove three elements: (1) the parent's or guardian's neglectful conduct or failure or inability to protect the child; (2) causation; and (3) serious physical harm or illness or a substantial risk of serious physical harm or illness." (*In re Cole L.*, *supra*, 70 Cal.App.5th at p. 601; see *S.F.*, at p. 713.)

"""In reviewing a challenge to the sufficiency of the evidence supporting the jurisdictional findings . . . , we determine if substantial evidence, contradicted or uncontradicted, supports them. "In making this determination, we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court." [Citation.] "We do not reweigh the evidence or exercise independent judgment, but merely determine if there are sufficient facts to support the findings of the trial court."'" [Citations.] However, "[s]ubstantial evidence is not synonymous with any evidence. [Citation.] To be substantial, the evidence must be of ponderable legal significance and must be reasonable in nature, credible, and of solid value."'" (*In re S.F.*, *supra*, 91 Cal.App.5th at p. 713; see *In re Cole L.*, *supra*, 70 Cal.App.5th at p. 602.)

### 2. *Substantial Evidence Supported the Jurisdiction Findings*

Sean F. contends substantial evidence did not support the jurisdiction findings under section 300, subdivisions (a), (b), and (j). But it did, at a minimum for the findings under subdivisions (a) and (b), and substantial evidence need only support one valid ground of jurisdiction. (*In re D.P.*, *supra*, 14 Cal.5th at p. 283.)

The evidence was that Sean F. abused April on multiple occasions and abused or physically harmed Lennon and Zoe. In November 2020 April called law enforcement and reported that Sean F. had "threatened to kill her" with a knife. In March 2022 law enforcement officers responded to a report of domestic violence involving Sean F. and April. April told a responding officer that Sean F. yelled at her, called her a "fucking bitch" for "taking too long" in the bathroom, and punched her in the face with a closed fist. When April tried to get away, Sean F. pushed her onto a bed and got on top of her. The responding officer observed that, consistent with April's statement, April's cheek was swollen and red. Sean was in the home during the incident. April said that the incident was the first time Sean F. had hit her, but that previously he had pushed and shoved her and thrown objects at her face.

A few weeks later a case social worker interviewed Lennon and Zoe—then eight years old and 10 years old—at their school. Lennon said that he was "very scared" of Sean F. because Sean F. was a violent person and that Sean F. had once "grabbed [his] hair and pushed [his] head into [a] wall." Lennon also said he had seen Sean F. hit his mom and throw keys at her. Zoe told the

8

social worker she was afraid of Sean F. because Sean F. had slapped her on the cheek and would often yell at her and Lennon.

When a Department investigator interviewed Zoe and Lennon some months later, the children repeated their statements. The Department also interviewed Lennon and Zoe's father, Abraham Z., who stated Sean F. had "smashed [Lennon's] head into a wall," which caused bruises that would not go away. Zoe confirmed that Sean F. had "slammed" Lennon into a wall and that Lennon had "a bruise or something" on his forehead.

Based on this evidence, the court could reasonably find that there was a substantial risk Sean F. would inflict serious physical harm nonaccidentally on Sean (section 300, subdivision (a)) and that Sean would suffer serious physical harm because Sean F. was unable to protect him (section 300, subdivision (b)). (See § 300, subd. (a) ["[f]or purposes of this subdivision, a court may find there is a substantial risk of serious future injury based on . . . a history of repeated inflictions of injuries on . . . the child's siblings, or a combination of these and other actions by the parent or guardian that indicate the child is at risk of serious physical harm"]; *In re L.B.*, *supra*, 88 Cal.App.5th at p. 411 ["[i]t is well settled that physical violence between a child's parents may support the exercise of jurisdiction under subdivision (b)(1) of section 300 where there is evidence that the domestic violence has placed the child *at risk* of physical harm and the violence is ongoing or likely to recur"]; *In re L.O.* (2021) 67 Cal.App.5th 227, 239 [because ""[c]hildren can be 'put in a position of physical danger from [spousal] violence,'"" the "juvenile court may invoke jurisdiction under section 300, subdivision (b), even if a child has emerged physically unscathed from an instance of domestic violence"];

9

*In re Marquis H.* (2013) 212 Cal.App.4th 718, 727 [although the parents had not abused the child, their abuse of their grandchildren supported jurisdiction under section 300, subdivision (a)]; cf. *In re D.B.* (2018) 26 Cal.App.5th 320, 332 [multiple injuries suffered by an infant's sibling permitted reasonable inference the infant was at a substantial risk of serious physical harm because "even a single episode of corporal punishment could have devastating consequences to [the infant's] physical health and safety"].)  Sean F. had been violent with each member of the family and had seriously injured April and Lennon.  The court could reasonably find it was only a matter of time before Sean suffered the same fate.  (See *In re Mariah T.* (2008) 159 Cal.App.4th 428, 439 ["a reasonable trier of fact was free to . . . conclude that without intervention, the severity of punishment could escalate even further"].)

Moreover, Sean F. refused to take responsibility for his actions.  (See *In re D.B.* (2020) 48 Cal.App.5th 613, 622 ["'[o]ne cannot correct a problem one fails to acknowledge'"]; *In re A.F.* (2016) 3 Cal.App.5th 283, 293 ["'[d]enial is a factor often relevant to determining whether persons are likely to modify their behavior in the future without court supervision'"].)  Sean F. repeatedly told social workers and investigators from the Department that he had never abused anyone in the family.  Indeed, at the combined jurisdiction and disposition hearing, Sean F. testified:  "I have never laid a hand on any of these children or the mother."  Sean F.'s denial he ever injured April or her children only increased the risk he would at some point injure Sean.  (See *In re V.L.* (2020) 54 Cal.App.5th 147, 156 ["A parent's denial of domestic violence increases the risk of it recurring."].)

Sean F. argues "a single incident of recent domestic violence" that does "not harm the children" cannot support a jurisdiction finding under section 300 where there is no risk of ongoing harm. He further argues he had been out of April's home for "months" by the time of the jurisdiction hearing. Sean F.'s statement of the law is generally correct (see *In re M.W.* (2015) 238 Cal.App.4th 1444, 1453 ["domestic violence between a child's parents may support the exercise of jurisdiction only if there is evidence that the violence harmed the children or placed them at risk of harm, and 'the violence is ongoing or likely to continue'"]), but his application of the law to the facts of this case is not. There was more than one incident of domestic violence between him and April. While April told law enforcement officers that the March 2022 incident was the first time Sean F. had hit her, she also stated that he had previously shoved her and thrown things at her. In addition, she had called law enforcement within the previous year to report Sean F. had threatened to kill her with a knife.[4] (See *In re T.V.* (2013) 217 Cal.App.4th 126, 134 [parents' "lengthy history of domestic violence" placed the child at a

---

[4] Sean F. asserts, without citing any authority, his threat to kill April with a knife "certainly" does not constitute domestic violence. The law is to the contrary. (See *Vinson v. Kinsey* (2023) 93 Cal.App.5th 1166, 1170, 1178-1179 [father's threat he would beat the mother's face in and kill her was domestic violence under Domestic Violence Prevention Act]; *People v. Caceres* (2019) 39 Cal.App.5th 917, 920 [defendant who threatened to use a knife to "chop" up his daughter's mother committed domestic violence for purposes of Domestic Violence Prevention Act]; see also Fam. Code, § 6203, subd. (a)(3) [for purposes of the Act, "abuse" includes "plac[ing] a person in reasonable apprehension of imminent serious bodily injury"].)

substantial risk of physical harm].)  And April was not the only person Sean F. had abused in the household.  He physically assaulted Lennon and he hit Zoe, which evidenced a propensity for violence against family members.  (See *In re M.W.*, *supra*, 238 Cal.App.4th at p. 1454 ["past abuse or violent behavior may predict future abuse"]; see also *In re Cole L.*, *supra*, 70 Cal.App.5th at p. 602 ["A parent's '"[p]ast conduct may be probative of current conditions" if there is reason to believe that the conduct will continue.'"].)

Sean F. also asserts substantial evidence did not support the findings he abused or harmed Lennon and Zoe because neither child described the "details" of the abuse and their injuries.  The record does not support that assertion.  Lennon told a social worker that Sean F. rammed his head into a wall causing him to bleed, and Abraham and Zoe confirmed Lennon had a bruise on his forehead.  (See *In re David H.* (2008) 165 Cal.App.4th 1626, 1644 [serious physical harm includes "bruises, red marks, welts, and broken skin"].)  The incident was so traumatic for Lennon that he said he never wanted to see Sean F. again.  Zoe similarly reported that Sean F. hit her in the face.  While Zoe's injury was perhaps not as serious as the head injury Sean F. inflicted on Lennon, the incident was yet another example of Sean F.'s long history of violent conduct toward his family, for which he refused to take accountability.  The juvenile court could reasonably conclude Sean was at a substantial risk of serious future injury under both subdivisions (a) and (b) of section 300.  (See § 300, subd. (a) ["a court may find there is a substantial risk of serious future injury based on the manner in which a less serious injury was inflicted, a history of repeated inflictions of injuries on . . . the child's siblings, and a

combination of these and other actions"]; *In re Mariah T.*, *supra*, 159 Cal.App.4th at pp. 438-439 [substantial evidence supported jurisdiction findings under section 300, subdivision (b), where mother repeatedly used corporal punishment on children and "den[ied] and minimize[d] what she had done".)[5]

## DISPOSITION

The juvenile court's jurisdiction finding is affirmed.

SEGAL, J.

We concur:

PERLUSS, P. J.                    MARTINEZ, J.

---

[5] Because we affirm the jurisdiction findings under subdivisions (a) and (b) based on domestic violence between Sean F. and April and on Sean F.'s abuse of Lennon and Zoe, we need not consider whether substantial evidence supported the jurisdiction findings based on Sean F.'s use of cannabis or the jurisdiction findings under subdivision (j).  (See *In re D.P.*, *supra*, 14 Cal.5th at p. 293; *In re I.J.*, *supra*, 56 Cal.4th at p. 773; *In re J.N.* (2021) 62 Cal.App.5th 767, 774.)